Charles HATCHETT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1284S495.

Supreme Court of Indiana.

Feb. 3, 1987.
Rehearing Denied Mar. 24, 1987.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Judge.

Appellant Charles Hatchett was tried by a jury and convicted of five counts of robbery, class B felonies, Ind.Code § 35–42–5–1 (Burns 1985 Repl.) and one count of confinement, a class B felony, Ind.Code § 35–42–3–3. The judge imposed a sentence of twenty years for each conviction, such sentences to be served consecutively for a total term of one hundred twenty years. Hatchett raises the following issues in this direct appeal:

1) Whether the trial court erred in trying Hatchett jointly with a co-defendant;

2) Whether the trial court erred in limiting cross-examination of two State witnesses regarding prior criminal conduct;

3) Whether the trial court erred in instructing the jury that, if convicted, Hatchett would be sentenced by the judge from various sentencing alternatives, and

4) Whether the evidence supported the enhanced sentences.

The evidence at trial showed that on January 24, 1984, Hatchett, along with cohorts Steven Hunter and Linell Beard, robbed an Indiana National Bank branch at gunpoint. The robbers forcibly removed the assistant manager to the parking lot, taking his car keys in an apparent attempt to escape in his car. Discovering a more likely vehicle, the three escaped in a van owned by a bank customer who was using the outdoor automatic teller machine. When the van proved unsuitable, the robbers ran another vehicle off the road, hit the seventy-eight-year-old driver over the head, and attempt-

ed to escape in that vehicle, only to find it stuck in an icy ditch. They were later successful in commandeering yet another car from another elderly victim.

Although the bank robbery was photographed by a surveillance camera, only co-defendant Hunter could be identified, as the other robbers were masked. However, an exploding packet of red dye marked the stolen money. On the day following the robbery, Howard Smith was arrested with red-dyed money in his possession.

Smith testified at trial that, though he was not a participant in the bank robbery, he had allowed Hatchett, Hunter and Beard to use a hand gun and a sawed-off shotgun "to get some money" on the morning of the robbery and that they had later returned with red-marked bills. Smith received some of the money, which he attempted to launder, in exchange for the use of his weapons. The police recovered the weapons used in the robbery from Smith and also recovered a firearm resembling a machine gun, later identified as a rifle.

Smith identified Hatchett at trial as one of the men who borrowed the weapons and returned with the money. He also pointed him out in the surveillance photographs by identifying the clothes Hatchett wore on the day of the crime. Smith was not prosecuted for his part in the robbery or for the possession of illegal firearms.

Anthony Thompson also saw Hatchett, Hunter and Beard following the robbery. Hunter told Thompson about the robbery, and Thompson helped Smith launder some of the bills in exchange for a share of the money. Thompson was likewise not charged. Another resident of Smith's apartment saw the three robbers return and divide the red-dyed money.

### I. Joint Trial

■ Two months before trial, the State filed a motion for consolidation of the trials of Hatchett, Hunter and Beard, each of whom had been charged separately. The court granted the motion. Hatchett and Hunter were tried together, Beard having pled guilty before trial commenced.

Hatchett objected to the joinder twice before the trial, objected during trial to being seated with Hunter and to sharing voir dire time and peremptory challenges. He renewed his objection at the close of the evidence. Though he filed no written motion for severance, he made his desire for a separate trial abundantly clear and adequately preserved the issue for appellate review.

■ Hatchett and Hunter could have been jointly charged in the same information, as each was charged with the same five counts of robbery and one count of confinement. Ind.Code § 35–34–1–9(b) (Burns 1985 Repl.). Absent any statutory provision for consolidated trials of separately charged defendants, it is within the court's discretion to determine whether defendants should be joined. *Cf., Roark v. State* (1955), 234 Ind. 615, 130 N.E.2d 326 (joinder of offenses for trial within trial court's discretion). As the defendants properly could have been joined at the charging phase, it was well within the trial court's discretion to consolidate the defendants' trials.

■ The trial court may order severance of jointly charged defendants when it determines a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of guilt or innocence. Ind.Code § 35–34–1–11(b) (Burns 1985 Repl.). The decision to grant or deny a separate trial is within the court's discretion. To show an abuse of discretion, appellant must demonstrate that in light of what occurred at trial, the denial of a separate trial subjected him to actual prejudice. *Hunt v. State* (1983), Ind., 455 N.E.2d 307.

■ Hatchett raises several specific allegations of prejudice resulting from the joint trial. He first complains of prejudice in the jury selection process, arguing that he was forced to share voir dire time and peremptory challenges with co-defendant Hunter. However, the transcript of voir dire is not included in the record of proceedings. Therefore, it is unclear whether

the defendants exhausted their voir dire time or their peremptory challenges. Hatchett does not point to any individual juror he was unable to challenge due to lack of voir dire or peremptory challenges.

Moreover, the trial court has broad discretion in regulating voir dire. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. In this case, the court allowed one hour of voir dire by the State and one hour of voir dire time to be shared by the defendants. Additionally, the court allowed the parties to submit written questions for possible use by the court. We have affirmed the trial court's limitation of voir dire to thirty-five minutes total per side to be shared by two co-defendants. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090. Appellant has not shown that limiting shared voir dire time to one hour restrained him with respect to any particular juror or any given subject. Accordingly, we regard the trial judge's decision as being within the range of his discretion.[1]

 Additionally, when two or more defendants are tried together, they must share challenges. Ind.Code § 35-37-1-3(d) (Burns 1985 Repl.). Sharing of peremptory challenges does not constitute any prejudice to the defendant absent actual prejudice at trial. *Hunt*, 455 N.E.2d 307. While Hatchett has stated his general aversion to sharing in the jury selection process with his co-defendant, he has not shown any actual prejudice which resulted. This generalized complaint is not sufficient to show an abuse of discretion.

 Hatchett further alleges that he was prejudiced by appearing at counsel ta-ble with co-defendant Hunter. The record indicates that neither Hunter's appearance nor his conduct at trial was in any way out of the ordinary. Rather, Hatchett argues that he was subject to "guilt by association." However, as presiding Judge Hoffman wrote for the Court of Appeals:

The trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. (citations omitted.)

*Johnson v. State* (1981), Ind.App., 423 N.E.2d 623, 629.

In this case, Hatchett and Hunter were identified in court by both Thompson and Smith, and Smith identified both robbers in the surveillance photographs. Bank employees testified as to the specific actions taken by each robber. There was no confusion about the distinct role each defendant played in the crimes. The fact that the evidence tended to show the guilt of Hunter in the same trial did not unduly prejudice the determination of Hatchett's guilt. *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

 Appellant also charges that his joint trial resulted in prejudicial jury instructions. Specifically, he points to instructions which name both Hatchett and Hunter in a single instruction and refer to "defendants" in the plural. He suggests that this plurality infers a conspiracy or joint culpability. Such a grammatical in-

---

1. Effective January 1, 1987, this Court has adopted a new rule governing this subject. Trial Rule 47(D) will now read as follows:

Examination of Jurors. The court shall permit the parties or their attorneys to conduct the examination of prospective jurors and may conduct the examination itself. The court's examination may include questions, if any, submitted in writing by any party or attorney.

If the court conducts the examination, it shall permit the parties or their attorneys to supplement the examination by further inquiry. The court may impose an advance time limi-tation upon such examination by the parties or their attorneys. At the expiration of said limitation, the court shall liberally grant additional reasonable time upon a showing of good cause related to the nature of the case, the quantity of prospective jurors examined and juror vacancies remaining, and the manner and content of the inquiries and responses given by the prospective jurors. The court may prohibit the parties and their attorneys from examination which is repetitive, argumentative, or otherwise improper but shall permit reasonable inquiry of the panel and individual jurors.

ference is tenuous at best. Moreover, the judge instructed the jury that it should give separate consideration to each defendant, that each defendant's case should be decided on the evidence and law applicable to him, and that any evidence limited to one defendant should not be considered as to the other defendant. Taken as a whole, the joint instructions were proper.

Finally, Hatchett alleges prejudice in the "possibility" that Beard, originally joined as a co-defendant for trial, could have given a statement implicating him, citing *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359. The defendant in *Baniszewski* was tried with co-defendants who in fact gave statements used at trial to implicate the defendant. Of course, in this case, Beard pled guilty and was not a co-defendant at trial. No statement by Beard was introduced against Hatchett, nor was there indication that Beard had ever given a statement against Hatchett. Though called as a witness by the State, Beard asserted his Fifth Amendment privilege and did not testify. The brief joinder of Hatchett and Beard as co-defendants prior to trial did not result in prejudice to appellant.

Hatchett has not shown any occurrence at the joint trial which subjected him to actual prejudice. The court therefore acted within its discretion by consolidating the trial of Hatchett and Hunter and by denying Hatchett's request for a separate trial.

## II. Cross-Examination of State's Witnesses

Prior to trial, the court granted the State's motion *in limine*, which precluded the defendants from inquiring into the criminal histories of State's witnesses Smith and Thompson. Hatchett now argues that these criminal histories should have been admissible as they formed part of the basis of the bargain between the witnesses and the State and because they tended to show the witnesses' bias and prejudice in favor of the State.

In addition to possessing the illegal weapons used in this robbery, Smith had two previous convictions for violation of the 1935 Indiana Firearms Act. Hatchett finds particular significance in the fact that the State did not charge Smith with his third firearms offense, for which he would have been subjected to a higher penalty. While all agreements with the State must be disclosed, *Smith v. State* (1985), Ind., 475 N.E.2d 1139, there is no evidence here to indicate any undisclosed agreement by the State. Smith testified that his testimony was given in exchange for the State's agreement not to prosecute on the robbery charge. This agreement was fully disclosed to the jury; Smith disavowed any other agreement.

Likewise, there was an absence of proof about the existence of any extraneous agreement between the State and Thompson. The State agreed to forego charges against Thompson in the present case in exchange for his testimony. In pleading guilty to an earlier, unrelated charge, Thompson had given Indianapolis police a clean-up statement admitting participation in four or five other robberies. He was not charged with these robberies and the potential charges were not part of the earlier plea bargain. There was no evidence that the prosecutor who entered into the present agreement knew of the existence of the earlier clean-up statement or any indication that the statement was any part of the present agreement.

The State fully revealed all existing agreements with the witnesses. Appellant has not shown the existence of any further agreements. The court did not err in disallowing questioning regarding nonexistent agreements. *Bland v. State* (1984), Ind., 468 N.E.2d 1032.

Hatchett also argues that cross-examination regarding the witnesses' criminal histories should have been allowed to show their bias toward the State. He correctly distinguishes between evidence of prior criminal conduct offered to impeach the character of the witness and evidence offered to show the bias or prejudice of the witness. As the Supreme Court explained:

One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross examination directed toward revealing possible biases, prejudice, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial and is always relevant as discrediting the witness and affecting the weight of his testimony.

*Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974).

Only those crimes which reflect on the witness' propensity to tell the truth are relevant to a general attack on his character. In Indiana those convictions which may be used to impeach a witness' character are limited to infamous crimes and crimes of dishonesty and false statement. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Evidence of Smith's prior firearms convictions or of Thompson's prior criminal acts clearly do not fall within this limitation. Moreover, had Thompson's criminal history been offered as general impeachment of character, it would have been disallowed under the general prohibition against particular acts of misconduct not reduced to a conviction. *Chambers v. State* (1979), 271 Ind. 357, 392 N.E.2d 1156.

Hatchett, however, offered proof of Smith's prior convictions and Thompson's criminal acts, not as evidence impeaching their character, but as evidence of the witnesses' desire to curry favor with the State. He argued that these prior criminal activities gave the witnesses added incentive to cooperate with the State, thereby demonstrating their bias. The constitutionally protected right of cross-examination is especially important to expose the possible biases, prejudices or ulterior motives of the witness. This right is not unlimited, however. The conduct of cross-examination lies within the sound discretion of the trial court. *Hossman v. State* (1984), Ind., 467 N.E.2d 416. It is not reversible error to disallow cross-examination for bias and prejudice if the questioning would not give rise to a reasonable degree of probability of bias and prejudice. *Blankenship v. State* (1984), Ind., 462 N.E.2d 1311.

In this case, the defendant had sufficient opportunity to explore the witnesses' bias. Both witnesses admitted that they were testifying as a result of an agreement with the State. Both admitted to prior convictions admissible under the *Ashton* rule; Smith admitted that he possessed illegal firearms but was not charged with such possession. Under these circumstances, the trial court's limitation of cross-examination was not an abuse of discretion. A similar conclusion was reached on this issue in co-defendant Hunter's appeal. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067.

### III. Sentencing Instruction

Appellant alleges that the court erred in instructing the jury as follows:

A person who is convicted of a crime by a jury is sentenced by the judge. By law the judge must hold a sentencing hearing in which a written pre-sentence report and all matters in mitigation and aggravation are considered. After the hearing the judge may have various sentencing alternatives, including imprisonment within a certain range. That is why these instructions do not contain any information concerning the penalties that could be imposed upon a conviction.

Hatchett asserts that this instruction was irrelevant because the jury serves no sentencing function. Ind.Code § 35–50–1–1. (Burns 1985 Repl.). While he is correct that instructions informing the jury of specific penalties are irrelevant, *DeBose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272,

the inverse conclusion that instructions explaining the absence of sentencing information are likewise irrelevant is fallacious. Such instructions relieve the jury of any speculation about the sentencing procedure and allow the jury to concentrate on the guilt or innocence of the defendant. Similar instructions have met with the approval of this court. *Kalady,* 462 N.E.2d 1299.

### IV. Sentencing

 Hatchett finally argues that his sentence of one hundred twenty years is not sufficiently supported by evidence of aggravating circumstances. The decision to enhance a sentence or to order sentences to be served consecutively is within the discretion of the trial court. *Robinson v. State* (1983), Ind., 446 N.E.2d 1287. It is for the trial judge to determine the weight to be given aggravating or mitigating factors in each case. *Anderson v. State* (1984), Ind., 466 N.E.2d 27. When a sentence appears unreasonable "at first blush," this court will engage in a review of the aggravating and mitigating factors considered. *Fointno v. State* (1986), Ind., 487 N.E.2d 140. A sentence authorized by statute will not be revised except where such sentence is manifestly unreasonable. Ind.Rules for Appellate Review, Rule 2; *Smith v. State* (1986), Ind., 490 N.E.2d 748.

While the sentence of one hundred twenty years initially may seem unreasonable, closer inspection of the nature of the crime and those statutory factors considered in aggravation indicate that the term imposed was not an abuse of the trial court's discretion. The crime committed was not a single robbery, but a series of crimes which began with the bank robbery. The robbers not only departed with their ill-gotten gains, but they also forcibly removed the assistant bank manager at gun point. They proceeded to steal several vehicles, striking the elderly driver of one. The nature of the crime and the age of the victim are therefore aggravating factors properly taken into account.

Moreover, though Hatchett was only eighteen years old at the time of sentencing, he had a lengthy criminal history, including past charges of battery with a deadly weapon, vehicle theft and attempted murder, as well as a felony theft conviction. In fact, Hatchett was free on bond awaiting sentencing on a prior offense when the current offense was committed. Thus, the nature of the defendant, his prior criminal history and the need for rehabilitative treatment were also properly considered by the trial court.

The factors which the court considered in aggravation were based on direct evidence contained in the record or on reasonable inferences drawn therefrom. Such factors are sufficient to support the imposition of enhanced sentences. Co-defendant Hunter's identical sentence was affirmed. *Hunter,* 492 N.E.2d 1067.

Finding no error in the conviction or sentence, we affirm the judgment of the trial court.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.