Brian LETICA, Appellant,

v.

STATE of Indiana, Appellee.

No. 64S00–8807–CR–00643.

Supreme Court of Indiana.

April 15, 1991.

John J. Halcarz, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant Brian Letica was convicted, following a court trial, of Attempted Criminal Deviate Conduct, a Class B felony, and received a sentence of 18 years. Letica also was convicted of Battery, a Class A misdemeanor, for which he was sentenced to one year and Battery, a Class B misdemeanor, for which he was sentenced to six months. All sentences were to run concurrently for a total of 18 years. He appeals directly to this Court and raises the following four issues:

1. Whether there was sufficient evidence for the trial court to find him guilty of Attempted Criminal Deviate Conduct, a Class B felony;

2. Whether the trial court erred in permitting the prosecutor to elicit details of his prior conviction;

3. Whether the trial court erred in permitting testimony at the sentencing hearing including hearsay evidence regarding his prior conviction and other acts not resulting in convictions; and

4. Whether the trial court erred in imposing an 18–year sentence.

The facts most favorable to the convictions show that on the night of July 12,

1987, at or about 10:20 p.m., the female victims, 14–year–old M.M. and 16–year–old C.A., were sitting together on a bench in front of the Willowcreek School in downtown Portage, Indiana, when a white male with a dark complexion rode his ten-speed bicycle within five feet of them. Because the area they were sitting in was illuminated by street lights, the girls were able to observe him for approximately five seconds as he rode by. He had dark hair and a goatee, was wearing cutoff jean shorts and a black tank top. At or about 10:30 p.m., while the girls were walking home, they noticed that the man had returned on his bicycle and was following them. The light was sufficient to allow the girls to observe him once again. He followed them as they walked side by side on the sidewalk and across a parking lot close to the football stadium. He pulled up along side of them in an attempt to engage in conversation. The girls walked faster and tried to ignore him. He slowed his pace until he was in back of them once again. M.M. asked him to stop following them. Moments later, the girls heard his bicycle hit the pavement and they were immediately and simultaneously attacked from behind. The assailant put one girl's head under each arm and pulled them together. M.M. was able to slip her head out from under his arm and escape within seconds. C.A. was not as fortunate. The assailant retained his grip on her, and threatened to kill her if she did not perform a sexual act as he demanded. Eventually, C.A. also freed herself and ran to the nearest house for help. She turned around once and saw the assailant return to his bicycle. M.M., who had stopped a passing motorist for assistance, saw C.A. run to the nearest house and caught up with her there. With the help of those inside, they summoned the police who responded immediately.

The police radio dispatcher received the call at exactly 10:42 p.m. M.M. described the assailant to the police radio dispatcher as a Mexican individual with a beard and black hair who was wearing cutoff blue jeans and a black tank top and riding a ten-speed bicycle. Portage Police Officer William Mesich, who was in the radio room when the call arrived, left as soon as the call came in and began driving his squad car towards Evergreen Street, which is approximately two blocks from the police station. The radio dispatcher relayed the assailant's description to Officer Mesich as he drove away from the police station. Less than one minute had elapsed from the time Officer Mesich left the police station when he turned northbound on Willowcreek and spotted Letica riding a ten-speed bicycle in the paved area next to the football field at Willowcreek School.

Officer Mesich stopped Letica, who was very sweaty and breathing heavily. He had a scratch on his face and his bare feet were bloodied. As soon as he was stopped, Letica took off his shirt to wipe the sweat off of his face and chest. In addition, he bent over and worked on his bicycle chain, getting his hands very greasy and dirty. He did not ask the officer why he had been stopped.

By 10:46 p.m., the requested backup officers had arrived. One of the officers drove to the house where the victims sought refuge and notified the victims that they had a suspect who possibly matched the description of their attacker. After telling the officer they were definitely sure they could identify their assailant if they saw him again, the victims were taken to the scene by squad car. The officer parked his squad car a distance of 20 to 30 feet from Letica, shining the car's bright lights towards him. Within one-half hour of their attack, both victims identified Letica as their attacker.

## I. *Sufficiency of the Evidence*

◼ Letica first alleges there was insufficient evidence to support his conviction of attempted criminal deviate conduct. He acknowledges, but challenges, our standard of review. In reviewing a challenge to the sufficiency of the evidence we neither reweigh the evidence nor judge credibility. We examine only the circumstantial and direct evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion that the defendant

is guilty beyond a reasonable doubt, the judgment will not be set aside on appeal. *Thomas v. State* (1988), Ind., 519 N.E.2d 143, 144–45. Letica argues that this standard of review is inconsistent with Ind.Trial Rules 50 and 59. We find nothing in these rules which is inconsistent with our appellate standard of review as set forth above.

■ Letica next contends, without citation to authority, that our standard of review is "one-sided" and unconstitutional because it deprives him of his due process rights on appeal. In *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, the United States Supreme Court set forth the relevant appellate standard of review in federal *habeas corpus* proceedings as follows:

> [T]his inquiry does not require a court to "ask whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S., [276] at 282, 17 L.Ed.2d 362, 87 S.Ct. 483 [486 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S., [356] at 362, 32 L.Ed.2d 152, 92 S.Ct. 1620 [1624 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

443 U.S. at 318–319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573–74 (footnotes omitted, emphasis in original). We apply the same standard of review on questions of insufficiency of the evidence on direct appeal. This fundamental standard of review is not unconstitutional. We now turn to the merits of Letica's claim of insufficiency.

■ Letica introduced alibi evidence and, although he acknowledges that the alibi testimony alone does not constitute sufficient grounds for reversal on appeal, he contends that such evidence, when combined with other factors present in this case, requires a reversal of his conviction. Those other alleged factors include conflicting evidence, a lack of positive identification, tainted identification procedures, and a lack of recollection by the victims at trial.

Letica maintains that a number of conflicts in the evidence lead to the conclusion that there was a substantial likelihood of misidentification in this case. Letica first points out that neither victim detected, or remembered, any odor of alcohol on their attacker's breath, whereas one of the arresting officers, Dennis Meyers, testified that in speaking with Letica upon his arrest, he noticed an obvious odor of alcohol. In addition, M.M. noticed nothing distinctive about her attacker's bare arms and C.A. mentioned her attacker had tatoos, but could not remember which arm the tatoos were on. In court, Letica demonstrated that he had tatoos on both arms, his chest, back and groin area, and that he had the tatoos on his body on July 12, 1987, the date of the crime. Letica also notes that neither victim mentioned the fact that his hands were greasy, whereas Detective Kiser testified that the palms of his hands were noticeably greasy. What Letica fails to mention, however, is that arresting Officer Mesich testified that when he initially pulled over Letica, he got off of his bicycle and started doing something to the chain. In addition, when Letica was brought to the police station for fingerprinting, he wanted photographs taken of his hands due to the fact that they were greasy and dirty. Finally, neither one of the victims was able to positively identify his bicycle in court. All of this evidence was presented to the trial judge who had each witness before him. We decline Letica's invitation to reweigh this evidence or judge the credibility

of the witnesses. *Thomas, supra.* Letica presents no grounds for reversal on these issues.

■ Letica further maintains that there was a lack of a positive identification by the victims and that the identification procedures upon his arrest were tainted. Letica first contends C.A. was unable to identify Letica in court as her attacker. Letica also argues, without citation to authority, that the identification procedures subsequent to his arrest were impermissibly suggestive. M.M. was able, over objection, to identify Letica in court and testified that she had no doubt in her mind that he was her attacker. It is undisputed that M.M. and C.A. were attacked by the same man. C.A. testified that Letica looked like the same person as her attacker in court, but was not positive of her identification. Nevertheless, C.A. did testify that if Letica was the "same guy that they had caught that night, then it's him." Arresting Officer Mesich did identify Letica in court as the individual he arrested on the night of July 12, 1987. Nevertheless, Letica alleges the post-arrest identification procedures were impermissibly suggestive. Letica points to the fact that both victims remained in a squad car while he was standing, with his bicycle, next to a number of police officers. From this, he concludes, a strong impression was left in the victims' minds prior to the identification that the police "had their man." It is well established that one-on-one confrontations, even though suggestive, are proper in circumstances where they occur immediately after the crime is committed. *Savage v. State* (1988), Ind., 523 N.E.2d 758, 761 (citing cases). Here, both victims identified Letica as their attacker within 30 minutes after the crime occurred.

Both victims had ample opportunity to observe Letica when he rode past them on his bicycle outside of Willowcreek School, and when he followed them as they walked home. One of the victims, M.M., was able to positively identify him in court. Both victims unequivocally identified him soon after his arrest. We find no error on these issues.

■ Finally, Letica maintains that the trial court judge expressed doubt in convicting him and that this Court should accordingly reverse his conviction and remand the case for a new trial by jury. The trial court judge's comments were, in pertinent part, as follows (emphasis added):

I've been sitting here over 15 years. I'm no expert on anything. I've heard plenty of criminal cases, murder to rape or whatever, and it's a known fact, human nature, that in many criminal cases some witnesses testify accurately, some are mistaken at times and, unfortunately, some lie. That's just the way it is. It will be that way a long time after I'm gone. It's always been that way. That's the way the evidence comes in.

Now, there is—If this is a misidentification case, which is possible, then I'm deeply sorry. I don't apologize because it's not my mistake in identification. I didn't identify anybody. It would be the mistake of the two victims, two girls. I apologize for them. I don't want to analyze all the facts in the case. The attorneys have done that for me. I don't have to do that. *I'm convinced beyond a reasonable doubt there's no mistake. There is no mistake, no doubt in my mind about it. If there was a doubt in my mind, that would be my judgment. There's no mistake here.*

I find the Defendant guilty of Count I, Criminal Deviate Conduct, Class B felony; Count III, Battery, Class A misdemeaner [sic]; Count IV Battery, Class A misdemeanor.

These comments, while recognizing Letica's defense of mistaken identity, do not lead us to the conclusion that a reasonable doubt existed in the mind of the trial judge. In fact, the trial judge explicitly stated that he was convinced beyond a reasonable doubt that there was no mistake.

Letica presents no reversible error on these issues.

## II. *Letica's Prior Conviction*

■ Letica took the stand in his own defense and testified about a prior burglary conviction. On cross-examination, the

State asked Letica, over his objection, whether that burglary conviction was for breaking and entering the building or structure of another to commit criminal deviate conduct. Letica answered that at the time he pled guilty to burglary, he didn't know what the underlying felony was, but had recently become aware that such, in fact, was the crime charged. Although Letica himself introduced his prior conviction, he contends it was error to allow the State to question him on the specifics of the burglary conviction because those questions raised additional issues of other possible offenses not resulting in conviction. We disagree. Letica opened the door on direct examination and the trial court properly allowed the State to question him on this issue. The questions here were intended to elicit a more accurate statement of Letica's prior burglary conviction. "Calling for the name of the felony intended upon the entry did not constitute an impermissible exploration of the details of the crime and was proper." *King v. State* (1984), Ind., 468 N.E.2d 226, 230–31.

■ Letica next contends that additional questions asked by the State were likewise improper and should result in a reversal of his conviction. Specifically, after Letica denied that his prior burglary conviction was for breaking and entering the dwelling of another to perform deviate conduct on a woman, he was asked whether it was to break and enter to rape a woman. After Letica replied in the negative, the State directly asked him: "Did you rape a woman?" to which Letica replied: "No, I didn't." Letica notes that the State introduced no evidence of his prior criminal record and contends this final question prejudiced him. Letica argues that evidence of a prior rape conviction does not fit under the depraved sexual instinct rule, citing *Reichard v. State* (1987), Ind., 510 N.E.2d 163, and *Lehiy v. State* (1987), 509 N.E.2d 1116. In *Reichard*, the trial court admitted evidence of prior alleged rapes perpetrated by the defendant upon various individuals. Likewise, in *Lehiy*, the State put on a witness who testified as to defendant's prior attempted rape of her. Both cases are distinguishable in that here the State did not attempt to produce evidence of a prior rape, but merely questioned Letica to provide a more accurate statement of his prior burglary conviction. *King, supra.* In addition, both *Lehiy* and *Reichard* are further distinguished in that both involved jury trials whereas Letica was tried before the bench; accordingly, there was no chance of a jury being prejudiced by the State's questions on cross-examination in this case.

Letica presents no reversible error on these issues.

### III. *Evidence of Letica's Prior Criminal History at Sentencing Hearing*

Letica contends that the trial court erred in permitting prejudicial testimony at his sentencing hearing. The State introduced a certified record from the Lake County Clerk's office concerning one of Letica's prior convictions as reflected in the pre-sentence report. This certified record was admitted without objection, but was not included in the record on appeal. Letica does not now challenge the introduction of this record, but rather maintains that the trial court erred in allowing a police officer's testimony regarding prior crimes charged. Letica does acknowledge, however, that strict rules of evidence do not apply in sentencing hearings and that hearsay evidence, including evidence of prior crimes, is admissible. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340, 1342.

■ Letica maintains, however, that the trial court committed reversible error in allowing a former desk sergeant with the New Chicago Police Department to testify regarding an investigation of the facts underpinning the crime to which Letica pled guilty. Because the officer was unable to identify Letica in court, Letica urges that the trial court committed reversible error in allowing the officer to testify. Because Letica did not object to such testimony on this basis, he has preserved no error with regard to this issue. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. Moreover, a defendant retains the right to refute any inaccurate or improper information. *Lang v. State* (1984), Ind., 461

N.E.2d 1110, 1115. Letica did not challenge the officer's testimony. We see no error, fundamental or otherwise, in allowing the officer to testify. This testimony included not only partial confessions given by Letica himself, but also statements from the victims of these crimes.

Letica had the opportunity to refute any of this information that was inaccurate. He did not attempt to explain, deny, or state his version of the alleged incidents. Nor did he request a continuance of the sentencing hearing to refute this testimony. Accordingly, the trial court properly received such testimony during the sentencing hearing concerning Letica's history of criminal misconduct.

Letica presents no reversible error on this issue.

### IV. *Sentencing*

Finally, Letica challenges the 18–year sentence the trial court imposed. Letica acknowledges our standard of review: sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. *Gary v. State* (1984), Ind., 471 N.E.2d 695. It is also within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1173. A sentence authorized by statute will not be revised except where such sentence is manifestly unreasonable. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398, 405. Letica contends that the sentencing judge failed to specifically state any aggravating or mitigating factors upon which he relied in increasing his sentence, but rather merely listed general categories in aggravation and mitigation.

This contention is without merit. The trial court specifically found Letica's prior criminal activity and a lack of remorse on his part as aggravating factors. In mitigation, the court recognized that Letica has a wife and children. In weighing this mitigating factor, however, the trial court noted if Letica has a wife and children, he shouldn't be out committing these types of crimes. The trial court went on to say it is unfortunate that, when a defendant is convicted and sentenced, often the people who comprise his family are punished along with him. The court noted, however, that members of Letica's family are not the only ones that suffer, but that the victims of his crimes suffer as well. The court further stated the crimes Letica committed were "quite an emotional experience for these people."

We do not find that the enhanced 18–year sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.