STATE of North Dakota, Plaintiff
and Appellee,

v.

William S. PURDY, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Dennis W. UCHTMAN, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Lori J. DRIVER, Defendant
and Appellant.

Cr. Nos. 910256, 910271,
910376 and 910278.

Supreme Court of North Dakota.

Oct. 1, 1992.

Constance L. Cleveland (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

Richard D. Varriano (argued), Moorhead, Minn., for defendants and appellants Dennis W. Uchtman and Lori J. Driver.

William S. Purdy, pro se.

JOHNSON, Justice.

William S. Purdy, Dennis W. Uchtman, and Lori J. Driver appeal from judgments of conviction entered upon jury verdicts finding them guilty of criminal trespass and physical obstruction of a government function.[1] We affirm.

On the morning of March 29, 1991, Purdy, Uchtman, and Driver, along with 23 others, were arrested inside a clinic operated by the Fargo Women's Health Organization, Inc., where abortions are performed. Each person placed a cryptonite bicycle lock around his or her neck and entered the clinic by rushing through a back door. Clinic personnel unsuccessfully attempted to keep the door closed and stop them from entering. Once inside, they sat on the floor and locked themselves together in eight groups of three people and one group of two people. Some members of the group sang hymns and prayed. Police were summoned and asked the group to leave, without success. Locksmiths then removed the locks from the participants so they could be moved safely. It took approximately three hours to remove everyone from the clinic.

All participants were charged with criminal trespass under § 12.1–22–03(2), N.D.C.C., and physical obstruction of a government function under § 12.1–08–01, N.D.C.C., both class A misdemeanors. Twenty-one of the participants, including Purdy, Uchtman, and Driver, were tried together. A six-person county court jury found them guilty on both charges. Purdy, Uchtman, and Driver have appealed, and the appeals have been consolidated pursuant to their motions.

I

Purdy and Uchtman assert that the trial court erred in refusing to grant motions to sever their trials.[2] We disagree.

 Joint trials of persons charged together with committing the same offense are the rule rather than the exception. *State v. Erickson*, 231 N.W.2d 758, 762 (N.D.1975). A joint defendant is not entitled to a separate trial as a matter of right. *State v. Whiteman*, 79 N.W.2d 528, 533 (N.D.1956). "Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more offenses." Rule 8(b), N.D.R.Crim.P. Under Rule 14, N.D.R.Crim.P., a trial court may grant a severance "[i]f it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together...."

 The purpose of Rule 14 is to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *State v. Lind*, 322 N.W.2d 826, 831 (N.D.1982). The defendant bears the burden of demonstrating prejudicial joinder. *State v. Dymowski*, 459 N.W.2d 777, 779 (N.D.1990). Bare allegations that a defendant would stand a better chance of acquittal in a separate trial or that there may be some "spillover effect" from evidence against a codefendant is insufficient to

---

1. Uchtman also appealed from an October 18, 1991, county court order denying a motion to credit his sentence with time served in the Cass County jail on different charges. *See generally State v. Sorensen*, 482 N.W.2d 596 (N.D.1992). Uchtman did not raise any issues in his brief or argument concerning this order. We therefore deem his appeal from the October 18, 1991 order to have been abandoned. *See Matter of Estate of Ambers*, 477 N.W.2d 218, 219 n. 2 (N.D.1991).

2. Although Purdy was represented by attorney Bruce Johnson during pretrial proceedings, he was one of seven defendants who ultimately appeared pro se during trial. He also appeared pro se on this appeal. Three attorneys represented the remaining defendants during the trial. Richard Varriano represented Uchtman during the trial and continues to represent him on appeal. John Broderick represented Driver during the trial, but she is represented by Varriano on this appeal.

The record shows that, of the three defendants who have appealed, only Purdy and Uchtman moved for severance. Driver, having failed to raise the issue in the trial court, cannot raise the severance issue on appeal. *E.g., State v. Hagstrom*, 274 N.W.2d 197, 200 (N.D.1979).

compel severance. *Dymowski, supra; Tillman v. United States,* 406 F.2d 930, 935 (5th Cir.), *cert. denied,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969); *United States v. Cooley,* 787 F.Supp. 977, 991 (D.Kan.1992). We will not set aside a trial court's refusal to grant a separate trial unless the defendant establishes a clear abuse of discretion. *Dymowski, supra.*

 Each defendant was charged with the same criminal offenses by engaging in essentially the same conduct. Although the number of defendants was somewhat large, there were not "issues so complex or difficult as to require or justify severance." *Cooley, supra.* The defendants presented different defenses, but they were not antagonistic. Generally, severance should be granted on a theory of mutually antagonistic defenses only if acceptance of a codefendant's version of the facts precludes acquittal of the defendant. *United States v. Harris,* 761 F.2d 394, 401 (7th Cir.1985); *see also United States v. Andrews,* 765 F.2d 1491, 1498 (11th Cir.1985); *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986) [defenses must be mutually exclusive and irreconcilable]; 8 *Moore's Federal Practice* ¶ 14.04[1], at p. 14–25 (1992); *Dymowski, supra,* 459 N.W.2d at 785 (VandeWalle, J., concurring specially). Here, Purdy claimed that he entered the clinic to make a citizen's arrest of the clinic administrator for violating a state law. Uchtman claimed he entered the clinic to enforce the same state law as well as "a higher law." Other defendants claimed that they entered the clinic to enforce "God's law." These are not irreconcilable defenses.

The claims of a "spillover effect" from evidence against other defendants is entirely speculative. The trial court specifically instructed the jury

> "to consider each defendant separately. In other words, if you find one defendant guilty, that does not automatically mean the others are similarly guilty. Likewise, should you find one defendant not

guilty, that does not automatically mean the others are not guilty. Each defendant is the subject of a separate prosecution and you must deliberate the merits of each of these separate prosecutions."

Purdy and Uchtman have not established that the jurors were unable to follow the trial court's instructions and appraise the guilt or innocence of each defendant based solely upon that defendant's own acts, statements, and conduct, and the independent evidence against that defendant. *See* 8 *Moore's Federal Practice, supra,* at p. 14–21. We conclude that the trial court did not abuse its discretion in refusing to grant separate trials for Purdy and Uchtman.

## II

Purdy asserts that the trial court erred in denying his motion for change of venue.[3] He contends that adverse pretrial publicity rendered it impossible for him to receive a fair trial before unbiased jurors in Cass County. We disagree.

Rule 21(a), N.D.R.Crim.P., provides:

> *"(a) For Prejudice in the County or Municipality.* The court upon motion of the defendant shall transfer the proceeding as to that defendant to another county or municipality whether or not that county or municipality is specified in the defendant's motion if the court is satisfied that there exists in the county or municipality in which the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial."

 Under the explanatory note to Rule 21, there are four factors the trial court should consider in determining whether to grant relief for pretrial publicity that may result in prejudice to the defendant: (1) whether the publicity was recent, widespread, and highly damaging to the defendant; (2) whether the prosecution was responsible for the objectionable material, or whether it emanated from independent sources; (3) whether inconvenience to the

---

**3.** Because only Purdy raised this issue in the trial court, Uchtman and Driver cannot raise this issue on appeal. *See Hagstrom, supra.*

prosecution and the administration of justice will result from a change of venue or continuance; and (4) whether a substantially better panel can be sworn at another time or place. This court has added four additional factors to this list: (1) the nature and gravity of the offense; (2) the size of the community; (3) the status of the defendant in the community; and (4) the popularity and prominence of the victim. *State v. Engel*, 289 N.W.2d 204, 206 (N.D.1980); *Olson v. North Dakota District Court*, 271 N.W.2d 574, 580 (N.D.1978).

■ A motion for change of venue is addressed to the sound discretion of the trial court, whose decision will not be reversed absent a showing of abuse of discretion prejudicial to the defendant. *State v. Leidholm*, 334 N.W.2d 811, 822 (N.D.1983). Purdy has not established that the trial court abused its discretion in refusing to grant his motion for change of venue.

■ Purdy submitted no evidence to the trial court to make a record about the pretrial publicity which we can review. Although Purdy, on appeal, submitted an appendix to his brief listing more than 70 Fargo Forum newspaper articles, editorials, and letters to the editor about the arrests and trial, this was not submitted to the trial court and, therefore, we cannot consider it. *E.g., Flex Credit, Inc. v. Winkowitsch*, 428 N.W.2d 236, 239 (N.D.1988). Pretrial publicity is not necessarily prejudicial to a criminal defendant. *State v. Page*, 277 N.W.2d 112, 115 (N.D.1979). It is "not the quantity of media coverage which controls a change of venue motion, but rather the likelihood that any degree of adversity toward the defendant which was caused by that publicity will prevent him from receiving a fair trial." *Houle v. North Dakota District Court*, 293 N.W.2d 872, 874 (N.D. 1980). The record does not establish that the community was biased or that the jury was predisposed to finding against Purdy. There is nothing in the record to suggest dissemination of inadmissible, illegally obtained, or otherwise prejudicial information. The unsupported arguments of Purdy's counsel at the hearing are insufficient to support a change of venue. *Cf. Engel,*

*supra*, 289 N.W.2d at 207 [affidavit of movant's attorney is not a sufficient basis for change of venue].

The proper occasion for determining whether it is impossible to select a fair and impartial jury is during the voir dire examination. *Engel, supra*, 289 N.W.2d at 206. Our review of the voir dire examination fails to reveal prejudice or bias against Purdy in the community. There were few jurors challenged for cause, and although many potential jurors acknowledged having heard or read something of the incident, they indicated that they could be fair and impartial to the issues presented in the case.

Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to grant Purdy's motion for change of venue.

### III

In a related argument, Purdy, Uchtman, and Driver assert that the trial court committed reversible error in limiting the time they were allotted for voir dire examinations. The trial court allowed all 21 defendants a total of two hours for voir dire and the prosecution a total of 40 minutes.

■ Rule 24(a), N.D.R.Crim.P., provides that "[t]he court shall permit the defendant or the defendant's attorney and the prosecuting attorney to participate in the examination of prospective jurors." However, the right to voir dire is not without limitations. It is properly within a trial court's discretion to impose reasonable restrictions on the exercise of voir dire, such as placing reasonable time limits on the voir dire examination and preventing the propounding of vexatious or repetitious questions. *See, e.g., Hatchett v. State*, 503 N.E.2d 398, 402 (Ind.1987); *People v. Jean*, 75 N.Y.2d 744, 551 N.Y.S.2d 889, 890, 551 N.E.2d 90, 91 (1989); *Maddux v. State*, 825 S.W.2d 511, 514 (Tex.Ct.App.1992). Nevertheless, because the purpose of voir dire is to obtain a fair and impartial jury [*see State v. Gross*, 351 N.W.2d 428, 433 (N.D. 1984); Explanatory Note to Rule 24, N.D.R.Crim.P.], placing arbitrary and un-

reasonable time limits on voir dire can result in reversible error. *See, e.g., State v. Petersen,* 368 N.W.2d 320, 322 (Minn.Ct. App.1985); *State v. Evans,* 352 N.W.2d 824, 826 (Minn.Ct.App.1984). We agree with those jurisdictions which hold that to establish prejudicial reversible error from time restrictions on voir dire, the defendant must show that he was precluded by the time restriction from asking relevant and proper questions to prospective jurors. *See Hatchett, supra; Jean, supra; Maddux, supra.*

■■■ In this case, the trial court, after informing the defendants of the two-hour time limit, described the limitation as "just ... a goal that we all strive to achieve.... If it doesn't work we'll take it up when it doesn't work." The trial court also explained to the defendants that "[a] lot of times the questions get repetitious ... and so if there's additional questions that you think need to be asked at the conclusion of the two hours you can submit those to the Court and we'll take them up" and "if the Court deems those appropriate then I may grant you a brief extension of the time to voir dire."

At no time during voir dire examinations did the defendants indicate that they had insufficient time to examine prospective jurors. Neither Purdy, Uchtman, nor Driver was stopped by the trial court during their voir dire examinations. The defendants did not submit additional questions to the trial court that they were unable to ask prospective jurors because of the two-hour time restriction. The defendants have failed to show any prejudice resulting from the time limitation. Therefore, we conclude that the trial court did not abuse its discretion in limiting the voir dire examination to two hours for the defendants.

IV

Purdy, Uchtman, and Driver contend that the trial court erred by limiting the number of peremptory challenges for all 21 defendants to eight and by requiring that the challenges be exercised jointly. Rule 24(b)(1), N.D.R.Crim.P., provides in part:

"(b) Challenges.

"(1) Peremptory Challenges. Each side is entitled to four (4) peremptory challenges when a six (6) person jury is to be impaneled.... If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly."

The defendants assert that the trial court erred in granting all 21 defendants a total of only four additional challenges. They contend that they were unable to reach agreement on their prospective juror challenges, and consequently, the challenges were not representative of each defendant.

■■■ Because multiple defendants are deemed a single "party" or "side" for purposes of Rule 24 [*see Staiger v. Gaarder,* 258 N.W.2d 641, 645 (N.D.1977); 2 Wright, *Federal Practice and Procedure: Criminal 2d* § 386 (1982) ], all 21 defendants were entitled to a total of four peremptory challenges. There is no "right" to additional peremptory challenges in multiple defendant cases. *United States v. McClendon,* 782 F.2d 785, 787 (9th Cir.1986); *United States v. Hueftle,* 687 F.2d 1305, 1309 (10th Cir.1982). Rather, Rule 24(b) gives the trial court broad discretion in granting or denying additional peremptory challenges beyond the number mandated by the rule. *See Staiger, supra;* 8A *Moore's Federal Practice* ¶ 24.05[1][c] (1992); 2 Wright, *supra.*

■■■ We reject the defendants' contention that the inability to agree on their peremptory challenges necessitated more challenges. Disagreement among codefendants on the exercise of joint peremptory challenges does not mandate a grant of additional challenges unless the defendants demonstrate that the jury ultimately selected is not impartial or representative of the community. *Stilson v. United States,* 250 U.S. 583, 586–587, 40 S.Ct. 28, 29–30, 63 L.Ed. 1154 (1919); *McClendon, supra,* 782 F.2d at 788.

In *Hueftle, supra,* fifteen defendants were jointly tried and convicted of trespassing at a nuclear plant site. In rejecting the defendants' complaint that they were joint-

ly allowed only three peremptory challenges and were unable to agree how to exercise them, the court reasoned:

"In the final analysis the only question is whether defendants were given a fair trial. Three challenges for fifteen defendants is not very generous, ... But we are unwilling to find as a matter of law that three peremptory challenges are too few in the present circumstances. Apparently there was no conflict of interest between the codefendants, they only disagreed over which jurors they thought would be more biased. We hold this is not a showing they were deprived of a fair trial." *Hueftle, supra*, 687 F.2d at 1309.

 Likewise, in this case, the defendants' interests were not adverse or antagonistic. Although Purdy asserts that he was prejudiced because the juror he wanted stricken was acquainted with the State's Attorney, the same juror was also acquainted with one of the defense attorneys. Collectively, the defendants simply chose not to exercise a peremptory challenge against that juror. The defendants have not shown that they were denied a fair trial by the trial court's allowance of only four additional peremptory challenges to be exercised jointly. We conclude that the trial court did not abuse its discretion.

## V

After the defendants were arrested, they were taken to the Cass County jail and a police officer took individual photographs of each defendant. Because few of the defendants identified themselves at that time or possessed any identifying information, they were booked into jail as either John or Jane Doe and assigned a number which was also placed on their photographs. Each defendant was ultimately identified by name.

Before trial, police officers prepared a large photograph chart of the defendants. Beside each defendant's picture appears a number and name. This chart was admitted in evidence and used by the prosecution to assist a testifying police officer in making an in-court identification of each defendant. Purdy, Uchtman, and Driver assert that this constituted an impermissibly suggestive identification procedure in violation of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and its progeny.

 Unless the substantial rights of an accused are prejudiced, an error in a criminal trial is harmless. *State v. Vogel*, 467 N.W.2d 86, 92 (N.D.1991). "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 52(a), N.D.R.Crim.P. We need not decide whether the chart was properly admitted in evidence for identification purposes, because error, if any, was harmless.

Identification of Purdy, Uchtman, and Driver was not a contested issue at the trial. Each freely admitted having entered the clinic on the morning of March 29, 1991, with a bicycle lock around his or her neck.

We conclude that any error by the trial court in receiving the chart in evidence and allowing its use for identification purposes was harmless.

## VI

 Uchtman asserts that the trial court erred in allowing the State to question him on cross-examination about his subsequent June 14, 1991, arrest at the clinic. He contends that this evidence was inadmissible under Rule 404(b), N.D.R.Evid. Because Uchtman never objected to this line of questioning, our inquiry is limited to determining whether the alleged error constitutes obvious error affecting substantial rights of the defendant under Rule 52(b), N.D.R.Crim.P. *State v. Potter*, 452 N.W.2d 71, 72 (N.D.1990). Our power to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice. *State v. Heintze*, 482 N.W.2d 590, 593 (N.D.1992).

 We find no obvious error here. Uchtman testified on direct examination by his counsel that he was currently residing at the Cass County jail, that he had been

there since June 14, 1991, and that he was committed to the closing of the "abortion mill" in Fargo. Otherwise incompetent evidence may be admissible if "the adversary has *opened the door.*" *State v. Jensen*, 282 N.W.2d 55, 68 (N.D.1979). [Emphasis in original.] Even if evidence of Uchtman's June 14 arrest at the clinic was inadmissible under Rule 404(b), it is not obvious error under these circumstances.

## VII

Purdy, Uchtman, and Driver assert that the evidence was insufficient to sustain their convictions for criminal trespass. We disagree.

To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Raulston*, 475 N.W.2d 127, 128 (N.D.1991). The tasks of weighing the evidence and judging the credibility of witnesses belong to the jury. *State v. Lovejoy*, 464 N.W.2d 386, 388 (N.D.1990). On appeal, this court must assume that the jury believed the evidence which supports the verdict and disbelieved any contrary evidence. *State v. Manke*, 328 N.W.2d 799, 806 (N.D.1982).

The defendants were charged with criminal trespass under § 12.1–22–03(2)(a), N.D.C.C., which provides that "[a] person is guilty of a class A misdemeanor if, knowing that he is not licensed or privileged to do so, he ... [e]nters or remains in any building, occupied structure, or storage structure, or separately secured or occupied portion thereof." For purposes of § 12.1–22–03(2), "privilege" means the freedom or authority to act and to use the property. *State v. Mehralian*, 301 N.W.2d 409, 417 (N.D.1981). "Licensed" means a consensual entry. *State v. Ronne*, 458 N.W.2d 294, 297 (N.D.1990).

The State presented evidence that on March 29, 1991, the front of the clinic was posted with signs stating "private property," "keep out," and "no trespassing." The clinic administrator testified that she did not give the defendants permission to be at the clinic. A counselor at the clinic testified that she and other clinic staff were trying to hold the back door shut but that the defendants pushed their way through the door and into the clinic. A nurse's aide at the clinic testified that, as the defendants pushed their way inside, they were "pushing against me and I told them that they had to stop, that they weren't supposed to be in here and that they had to leave and they just kept shoving against me." A volunteer at the clinic testified that she saw the defendants coming through the doorway while staff members were trying to block the door, heard "scuffling" and "someone yelling 'go limp,'" and saw "the protestors ... lying down in the hallway putting locks on their necks." A police officer testified that upon arriving at the clinic he informed the defendants that they were trespassing, that clinic representatives wanted them removed, and "that if they would get up and leave at this time ... there would be no charges pressed." According to the officer, the defendants did not respond.

Uchtman testified that he knew he was not authorized by the clinic administration to be there. Driver acknowledged that she was not authorized by clinic personnel to be there. Purdy testified that he did not believe he needed authorization from clinic personnel to be there.

We conclude that there is substantial evidence to sustain the defendants' convictions for criminal trespass.

## VIII

Purdy, Uchtman, and Driver also assert that the evidence was insufficient to support their convictions for physical obstruction of a government function. Again, we disagree.

Section 12.1–08–01(1), N.D.C.C., provides that "[a] person is guilty of a class A misdemeanor if he intentionally obstructs, impairs, impedes, hinders, prevents, or perverts the administration of law or other governmental function." While this statute does not apply to the conduct of a person obstructing arrest of himself, it

does apply to the conduct of a person obstructing arrest of another. Section 12.1–08–01(2), N.D.C.C. Although the use of direct force or physical violence may not be required to constitute the offense of physical obstruction of a government function, we have indicated that some overt act is required. *See State v. Rott*, 380 N.W.2d 325, 328 (N.D.1986). *See also City of Grand Forks v. Cameron*, 435 N.W.2d 700, 703 (N.D.1989).

■ The State's theory was that the defendants, by placing the bicycle locks on their necks and locking themselves together in several groups, intended to impede or hinder the police in making the arrests of all defendants for criminal trespass. Police officers testified that, because of concern for the defendants' safety, they employed locksmiths to remove the locks so the defendants could be transferred to jail. Because of the locks, the defendants' removal from the clinic took approximately three hours.

Uchtman admitted that he entered the clinic with a bicycle lock around his neck and was interlocked with two others to make the incident last longer and "keep the killing down as long as we could." Uchtman explained that "if there was just two [locked] together it's quite possible that a couple of big police officers could get around you and just pick you up and carry you out. With three it's a lot harder and so that's the reason there were three of us." Driver testified that she "locked in" to "save babies" and "give the sidewalk counselors more time to talk to the girls going into the clinic...." Purdy implied that he "locked in" in order to prevent abortions and to help effectuate his "citizen's arrest" of the clinic administrator, because "I knew that she would not leave ... if everybody was there." The testimony of the defendants permits a reasonable inference that they "locked in" for the sole purpose of hindering and delaying the arrest of not only themselves, but others to whom they were interlocked. The evidence also shows that they succeeded in hindering and delaying the arrests.

We conclude that there is substantial evidence to sustain the defendants' convictions for physical obstruction of a government function.

## IX

Purdy and Uchtman assert that the State did not "negate" their defenses of excuse based upon mistake of law. Purdy and Uchtman argued that they acted in reliance on § 14–02.1–04(2), N.D.C.C., of the Abortion Control Act, which prohibits abortions in any facility other than a licensed hospital after the first 12 weeks of pregnancy. The State entered in evidence an August 25, 1983, stipulation for judgment approved by the United States District Court for the District of North Dakota which states that § 14–02.1–04(2) is unconstitutional and which permanently enjoins its enforcement. Purdy argued that he entered the clinic to arrest the clinic administrator for violating the statute. Uchtman argued that he entered the clinic, in part, to enforce the statute.

■ The jury was instructed regarding excuse based upon mistake of law in accordance with §§ 12.1–05–08 and 12.1–05–09(1), N.D.C.C. Because mistake of law is an affirmative defense, the State had no burden to "negate" the defense beyond a reasonable doubt; rather, Purdy and Uchtman had the burden of proving the affirmative defense by a preponderance of the evidence. Section 12.1–01–03(1) and (3), N.D.C.C.; *State v. Michlitsch*, 438 N.W.2d 175, 178 (N.D.1989). Purdy and Uchtman were given full reign to argue this defense to the jury. We must assume that the jury followed the judge's instructions and, by its verdicts of guilty, simply found that Purdy and Uchtman had not established their defense by a preponderance of the evidence. *See City of Fargo v. Komulainen*, 466 N.W.2d 610, 612 (N.D.1991). We will not second-guess the jury on that matter.

We have considered the other arguments of the defendants and they do not affect our decision. Accordingly, the judgments of conviction are affirmed.

**412**

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.