STATE of Utah, Plaintiff and
Respondent,

v.

Nelson BAIR, Defendant and Appellant.

No. 18727.

Supreme Court of Utah.

Oct. 5, 1983.

Sheldon R. Carter, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Carlie Christensen, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

This is an appeal from two second degree felony convictions of theft by "retaining" stolen property.[1]

On February 5, 1982, police officers from the Provo and American Fork Police Departments, acting under the authority of a search warrant, entered and searched the residence of one Keith Bair. The search resulted in the seizure of, *inter alia,* some 96 firearms.

---

6. *State v. Hayes,* Utah, 572 P.2d 368 (1977). *See also State v. Eaton,* Utah, 569 P.2d 1114 (1977).

1. In violation of U.C.A., 1953, § 76–6–408.

Keith Bair's residence, which is located in American Fork, Utah, was described as a small rambler-style house with a living room, kitchen, bathroom and three bedrooms on the main floor and a full unfinished basement. At the time the residence was searched, the three bedrooms were occupied as follows: the third bedroom from the front door was occupied by Keith; the second, by his brother, Kent, and Kent's two small children; and the first, by Keith's father, the defendant Nelson Bair. The evidence at trial established that while defendant kept many of his personal belongings at the house and maintained his mailing address there, he only slept at the house approximately two nights a week.

The search of the Keith Bair residence was prompted by information given Officer Greg DuVal of the Provo City Police Department by an informant named Bridgett Hamilton. Officer DuVal testified that Ms. Hamilton supplied him with the serial numbers of approximately 20 guns she had observed in the subject residence while babysitting Kent Bair's children. The result of an NCIC check on those serial numbers revealed that at least four of the weapons had been stolen during three separate burglaries. The theft of the weapons was further verified by the Utah County Sheriff's Office and the American Fork Police Department. Based upon this information, Officer DuVal submitted a probable cause affidavit to a magistrate, whereupon a search warrant was issued. The warrant listed the 4 weapons that had been verified as stolen and authorized the search of the entire premises (Keith Bair's residence), any attached structures and the surrounding curtilage.

The officers began their search of the subject premises in the first bedroom, which, as pointed out above, was occupied occasionally by the defendant. They found a pistol lying near the bed and approximately 20 to 25 guns stacked in the corner of the bedroom closet. However, none of the serial numbers on these guns corresponded to the 4 guns listed on the search warrant, so the officers continued their search into the next or second bedroom

(occupied by Kent Bair and his two small children) and then into the third bedroom (Keith's room), where they finally found, among numerous weapons, the 4 listed on the search warrant. Altogether, 96 weapons were seized, many of which were new and one of which had the name of "Robert Peay" engraved on it. An NCIC check established that more than 80 percent of the seized weapons had been stolen.

Of the approximately 20 to 30 guns found in the bedroom occupied by defendant on February 5, 1982, 1 was determined to be the property of Robert Peay, 7 belonged to Robinson's Sporting Goods and 1 belonged to Myron Clegg.

On February 9, 1982, Officer DuVal filed an information charging the defendant with two counts of "retaining" stolen property in violation. of U.C.A., 1953, § 76–6–408. The first count charged:

> [O]n or about the 5th day of February, 1982, at Utah County, State of Utah . . . Nelson Bair retained the firearm of Robinson [sic] Sporting Goods, knowing it had been stolen, or believing that it probably had been stolen, with a purpose to deprive the owner thereof.

The second count charged that on or about the same day, February 5, 1982, and at the same time and place, the defendant similarly retained a stolen firearm belonging to Robert Peay with the requisite knowledge or belief that the property had theretofore been stolen.

On March 22, another information was filed by the Provo City Police, charging defendant with the theft of Myron Clegg's property in violation of U.C.A., 1953, §§ 76–6–404 & 76–6–412. This information proceeded to trial first. On the first day of trial, May 24, 1982, plaintiff informed the court of its intention to proceed under the same statutory section (§ 76–6–408) as had been alleged in the information involving the Peay and Robinson's Sporting Goods property. The court permitted the prosecution to proceed accordingly, and the matter was tried to a jury. Instructions were given the jury on the elements of theft

(§ 76–6–404) and retaining property known or believed to be stolen (§ 76–6–408). A verdict of not guilty resulted.

The February 9 information was subsequently tried to the bench on July 21, 1982. Defendant entered a motion to dismiss the case, alleging that to try him twice for the retention of stolen property would be a violation of U.C.A., 1953, § 76–1–403 (single criminal episode), the doctrine of collateral estoppel and the double jeopardy provisions of both the United States and Utah Constitutions. His motion was denied, and a finding of guilty on both counts was entered.

On appeal, defendant seeks a reversal of his convictions on the same grounds he relied upon below to support his motion to dismiss, *supra.* We first consider his argument with respect to the "single criminal episode" statute (U.C.A., 1953, § 76–1–403), since it is dispositive of this appeal.

Defendant contends that the present prosecution is barred because the offenses with which he is charged arose out of the same criminal episode and are identical to the offenses for which he was formerly tried and acquitted. This contention rests upon § 76–1–403, which provides in pertinent part:

> If a defendant has been prosecuted for one or more offenses arising out of a single criminal episode, a subsequent prosecution for the same or a different offense arising out of the same criminal episode is barred if (a) the subsequent prosecution is for an offense that was or should have been tried under Section 76–1–402(2) in the former prosecution; and (b) the former prosecution (i) resulted in acquittal; or (ii) resulted in conviction
> . . . .

Section 76–1–402(2) provides:

> Whenever conduct may establish separate offenses under a single criminal episode, unless the Court otherwise orders to promote justice, a defendant shall not be subject to separate trials for multiple offenses when (a) the offenses are within the jurisdiction of a single court and (b) the offenses are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment.

Section 76–1–401 defines "single criminal episode" as follows:

> "Single criminal episode" defined—Joinder of offenses and defendants.—In this part unless the context requires a different definition, "single criminal episode" means all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective.

Defendant maintains that the statutory requirements set forth above are fully satisfied under the facts of this case. Specifically, he claims that the definitional requirement that the offenses be closely related in time and pursuant to a single criminal objective is satisfied by the fact that all of the stolen property allegedly retained by defendant was retained simultaneously. Additionally, defendant points out that the property was all seized at the same time and place and both informations charged that the crimes occurred on or about the same date, to wit: February 5, 1982.

As to the remaining elements of § 76–1–403, defendant claims the following: subsection (a) is satisfied in that the charges contained in both informations "are within the jurisdiction of a single court" (§ 76–1–402(2)(a)) and were "known to the prosecuting attorney at the time the defendant [was] arraigned on the first information or indictment" (§ 76–1–402(2)(b)), and subsection (b) is satisfied by reason of defendant's acquittal on the former prosecution.

Plaintiff makes no adverse claim with regard to the elements mentioned in the preceding paragraph, and we find nothing in the record to refute defendant's argument with respect thereto. Plaintiff's rejoinder focuses on the definition of "single criminal episode." It observes that the language of § 76–1–401, particularly the phrase "closely related in time," has been interpreted by this Court in two recent deci-

**206**

sions, *State v. Ireland*[2] and *State v. Cornish*.[3] In those decisions, the Court found that criminal acts separated by a day or by the time it takes to drive 65 miles were not closely related in time for the purpose of § 76–1–401. Thus interpreted, plaintiff contends that the "single criminal episode" statute has no application in the present matter because the criminal acts for which defendant was charged in the first and second prosecutions were committed, not just a day or a few hours apart, but several months apart. Plaintiff points out that the firearms belonging to Myron Clegg, which were the subject of the first prosecution, were stolen from Clegg's residence in May of 1981, while the firearms belonging to Robert Peay and Robinson's Sporting Goods, subject of the present (second) prosecution, were stolen in October and December of 1980, respectively.

Plaintiff further contends that not only does defendant's conduct fail to satisfy the closeness in time aspect of the definition (§ 76–1–401), it also fails to establish the single criminal objective aspect thereof. It claims that each act of receiving stolen property—it claims, *supra,* that three such acts occurred—required the formation of a separate criminal intent.

In denying defendant's motion to dismiss, the trial court stated, "[T]he discovery at one time and place of numerous articles of property stolen at various times and places does not merge the preceding offenses into a single criminal episode." The court cited and relied upon the following rule of law:

[R]eceiving or concealing different articles of stolen property at different times and on separate and unconnected occasions even though pursuant to a single scheme constitute separate offenses and cannot be prosecuted as one crime, in one count, even where all of the property is afterwards found in possession of the defendant at the same time and place.[4]

Application of the foregoing rule is specifically conditioned upon proof that the receipt of the different articles of stolen property occurred "at different times and on separate and unconnected occasions," *supra.* If the evidence does not satisfy this condition, but instead shows that the stolen articles were all received on one occasion, then the converse of the foregoing rule is true, i.e., the receipt is considered a single offense and must be prosecuted as one crime. The relevance of this concept to the present issue regarding the single criminal episode statute should be obvious. If defendant's receipt of the various stolen guns occurred on only one occasion, it definitely satisfied the "closely related in time" requirement of the single criminal episode statute, as well as the "single criminal objective" requirement thereof; whereas, if the receipt occurred on several occasions, such requirements are clearly not satisfied.

The foregoing concept is illustrated in numerous cases. In the case of *State v. Bell,*[5] the defendant appealed from two convictions of receiving stolen property, alleging, *inter alia,* that his simultaneous possession of various articles of stolen property (belonging to various owners) constituted a single offense. In its affirmance of both convictions, the Supreme Court of New Mexico noted that defendant was not being charged with "possessing" the stolen property, but rather with "receiving" such property. Upon this premise, the court observed:

If defendant received the stolen pistol at a time different from the time that he received the gun club and Patterson property, then there were two offenses for which two sentences would be imposed even though at the time of discovery defendant possessed all the stolen property involved.[6]

---

**2.** Utah, 570 P.2d 1206 (1977).

**3.** Utah, 571 P.2d 577 (1977).

**4.** 66 Am.Jur.2d Receiving Stolen Property § 14 (1973). *See also State v. Kuhnley,* 74 Ariz. 10,

242 P.2d 843 (1952); *Hamilton v. State,* 129 Fla. 219, 176 So. 89 (1937).

**5.** 90 N.M. 160, 560 P.2d 951 (1977).

**6.** *Id.* 560 P.2d at 954.

Inasmuch as the evidence showed that the stolen property had been received by defendant on separate occasions, the court held that the offenses were indeed separate.

In *State v. Kuhnley*,[7] a case which also involved numerous charges against a single defendant for receiving property that had previously been stolen by another from several different owners, the Arizona Supreme Court held that the charges constituted separate offenses and gave the following explanation:

> While the thief Jeremy was somewhat hazy in his testimony as to date, it indubitably appears from the state's proof that the articles in question were not delivered to the defendant at the same time but in truth and fact the thefts occurred separately and at various times between the months of September, 1950 and May, 1951 and that invariably the stolen article was immediately thereafter delivered to the defendant at his home. There is no evidence that even any two of the articles were received by the defendant at the same time.[8]

In the case of *State v. Clark*,[9] the Oregon court found that the multiple charges against defendant of receiving stolen property constituted but one offense, because the evidence failed to establish that the receipt of the various stolen articles occurred on separate and unconnected occasions. The court held as follows:

> [I]f the state contended the articles were received or concealed by the defendant on separate occasions, it was incumbent upon it to offer evidence to that effect. It did not do so. Here the indictment not only expressly alleged as to each count that the offense was committed on the same date, but also that each was "a part

of the same act and transaction" charged in the other two counts.[10]

▮ Upon reviewing the entire record in the case presently before us, we find, contrary to the view of both plaintiff and the trial court, that the evidence does not establish that defendant received the various stolen guns on separate occasions. Both plaintiff's argument and the trial court's ruling (above) on this issue are based upon a false premise. They assume that the same evidence which shows that the various articles of stolen property were actually "taken" on three separate occasions also serves as evidence that defendant "received" these stolen articles on the same three occasions. This assumption is entirely misplaced. The record does not show that defendant received the stolen property on three different occasions; rather it shows that the property was brought into Keith Bair's house by Keith Bair and a friend on a single occasion (i.e., sometime during the last week of October, 1981) and was at that time placed in the closet of the room which was occupied approximately two days a week by defendant. It further shows that at the time the stolen property was placed in the closet, defendant was away on a hunting trip.

That proof of the date of the actual "taking" does not necessarily establish the date of "receipt" for purposes of the charge of receiving stolen property has been determined in previous cases. In *State v. Clark, supra*, citing *People v. Smith*,[11] it was held:

> [T]he pleading and proof of the successive thefts from different owners enters into the pleading and proof of the crime of receiving such stolen property in a single transaction only for the purpose of showing that the property had in fact been stolen and that the person charged had guilty knowledge.[12]

---

7.  *Supra* n. 4.

8.  *Id.* 242 P.2d at 847.

9.  9 Or.App. 530, 497 P.2d 1210 (1972). *See also People v. Smith*, 26 Cal.2d 854, 161 P.2d 941 (1945).

10.  497 P.2d at 1212. It is noted that both informations filed against the defendant in the

present cases charged that the offenses of receiving stolen property occurred on the same date, i.e., February 5, 1982.

11.  *Supra* n. 9.

12.  497 P.2d at 1212. *See also State v. Bell, supra* n. 5.

In light of the aforestated facts, we conclude that the offenses allegedly committed by defendant for which he was prosecuted in the first and second (present) prosecutions were closely related in time and pursuant to a single criminal objective. Accordingly, we hold that the present prosecution is precluded by the single criminal episode statute, *supra.*

It is further to be noted that neither plaintiff nor the trial court recognizes any distinction between charges of "retaining" stolen property, "receiving" stolen property, or actual "taking" the property of another. This is evidenced by the fact that plaintiff, while formally charging defendant with "retaining" stolen property, presented evidence to support charges of "receiving" and "taking" and by the fact that the trial court, notwithstanding the denomination of the charges as "retaining," based its ruling (denial) with respect to defendant's motion to dismiss upon a rule of law relative to the charge of "receiving," *supra.*

The above-mentioned charges are not themselves separate offenses, although they are separate and distinct substantive definitions of the single offense of "theft."[13] Under the consolidated theft statute, proof establishing any one of these substantive definitions will support a general accusation or charge of "theft."[14] The statute does not, however, go a step further and say that proof establishing one substantive definition, such as "receiving" stolen property, will support an accusation of another substantive definition, such as "retaining" stolen property or "taking" the property of another. Whether, under principles of consolidation, the statute may be thus extended is a question that has not as yet been addressed by this Court,[15] nor do we find it necessary to address the question now. The result of this case under the charge of "retaining" will be the same as it is under "receiving" (above), because "retaining" the stolen property of different individuals is but a single act and must be prosecuted as only one offense if the evidence shows, as it clearly does here, that the retention or possession of such stolen property was simultaneous.[16]

In light of our disposition of this issue, it is unnecessary to address the remaining issues raised by the defendant. The conviction and judgment of the trial court are reversed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

13. U.C.A., 1953, § 76–6–401, *et seq.*

14. U.C.A., 1953, § 76–6–403. This section further provides that its application is "subject to the power of the court to ensure a fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise."

15. *See* "Utah's New Penal Code: Theft" 1973 Utah L.Rev. 718.

16. *See Sanchez v. State,* 97 N.M. 445, 640 P.2d 1325 (1982); *State v. Reisig,* 128 Ariz. 60, 623 P.2d 849 (App.1980); *State v. Gilbert,* 27 Or. App. 1, 555 P.2d 31 (1976).