**Hilda J. BENBERRY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–0005–CR–330.

Court of Appeals of Indiana.

Feb. 6, 2001.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

· Appellant, Hilda J. Benberry, appeals from her convictions for two counts of Forgery[1] as Class C felonies, and three counts of Theft[2] as Class D felonies.

We affirm in part, reverse in part, and remand for vacation of two of the theft convictions.

Upon appeal, Hilda presents three issues which we renumber and restate as:

(1) Whether the trial court erred in allowing into evidence testimony and physical evidence of items taken from Hilda's person pursuant to a search made by a store employee;

(2) Whether the convictions for Theft under Counts III, IV and V[3] violate the "single larceny rule"; and

(3) Whether the convictions for Forgery under Counts I or II and for Theft under Count III constitute double jeopardy.

The facts most favorable to the judgment reveal that on January 21, 1999, Matthew J. Utterback's apartment was broken into and his unsigned MBNA MasterCard credit card was stolen. On February 1, 1999, the apartment of David Van Jelgerhuis and Amy Lengel was broken into. As

---

1. I.C. 35–43–5–2(4) (Burns Code Ed. Repl. 1998).

2. I.C. 35–43–4–2(a) (Burns Code Ed. Repl. 1998).

3. Hilda argues that her convictions for theft under Count IV and Count V violate the "single larceny rule." However, the evidence presented at trial shows that Hilda obtained all four credit cards at the same time. Thus, her conviction for theft under Count III is also considered in our discussion of the "single larceny rule."

a result, David's Citibank VISA credit card as well as Amy's J.C. Penney and L.S. Ayres credit cards were stolen.

On February 2, 1999, Hilda entered the J.C. Penney store in the Washington Square Mall and attempted to purchase a diamond ring by presenting an MBNA credit card to the sales clerk, Gloria Jean King. This MBNA credit card bore the name of "Matthew Utterback" on the front and a signature on the back that read "Mrs. Matthew Utterback." Record at 94. Gloria became suspicious that the card was stolen and called store security. Meanwhile, Hilda left the sales counter to use the restroom. Loss Prevention Manager Christopher Lamb went to Gloria's register in response "to a code on a bank card that was reported lost or stolen." Record at 103. Mr. Lamb left Gloria's register, took the credit card upstairs with him, and returned to Gloria's register after talking to the credit department. When Hilda returned, Mr. Lamb requested that she provide personal identification. Because Hilda did not have any proof that she was "Mrs. Matthew Utterback," she agreed to accompany Mr. Lamb to the security office. While in the security office, Hilda was interviewed by Mr. Lamb in the presence of store employee Fred Clark and senior merchandising assistant Harriet Patterson. During the interview, Hilda admitted to Mr. Lamb that she was not Mr. Utterback's wife and that she was not authorized to use his credit card. At some point during the interview, Harriet searched Hilda and recovered a Citibank VISA credit card in the name of David Van Jelgerhuis, J.C. Penney, and L.S. Ayres credit cards in the name of Amy Lengel, and a gold necklace. A Marion County Sheriff's Deputy arrived and Hilda was arrested.

A bench trial was held on September 24, 1999. Matthew, David and Amy each testified that Hilda was not authorized to use their individual credit cards. Mohammad Rajput, a salesperson for Gold N Gems, stated that the photograph of a gold herringbone necklace recovered from Hilda during the search depicted the same gold herringbone necklace that Hilda had purchased from him at Gold N Gems on February 2, 1999. According to Mohammad, Hilda signed the receipt for this necklace as "Mrs. Matthew Utterback." Record at 147.

During the State's direct examination of Harriet Patterson, Hilda objected to a question concerning statements that were made by her during the interview, and moved "to suppress anything." Record at 133. The trial court sustained the objection, noting that the testimony would have been repetitive.

Hilda testified that she was not Mrs. Utterback and that she signed as Mrs. Utterback because "that's what was required to make the purchase." Record at 164. In addition, Hilda stated that she was aware she was not entitled to possess or use the credit cards.

Hilda was convicted and sentenced to concurrent sentences of eight years on each forgery count to be served concurrent to three years on each theft count.

I

*Suppression of Evidence*

■ Initially, we address Hilda's contention that the trial court erred in admitting into evidence Harriet Patterson's testimony concerning the items she removed from Hilda during the search, as well as Hilda's contention that the trial court erred in admitting physical evidence of the items recovered during the search. Hilda argues that the evidence should have been excluded because the search was conducted without a warrant, and because the State failed to establish that one of the exceptions to the warrant requirement had been met.

■ To preserve a suppression claim, " 'a defendant must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal is-

sue.' " *G.J. v. State* (1999) Ind.App., 716 N.E.2d 475, 478 (quoting *Moore v. State* (1996) Ind., 669 N.E.2d 733, 742). A defendant waives his suppression claim if he "fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds." *G.J., supra* at 478 (quoting *Moore, supra* at 742). During the trial, the State questioned Harriet concerning the statements Hilda made during the interview with Mr. Lamb, Mr. Clark, and Harriet. The following dialogue ensued:

"Q. During that interview what was discussed?

MR. HUELSKAMP: Objection, Judge.

THE COURT: Sustained. What, if anything, did the defendant say during—

MR. HUELSKAMP: And, Judge, now—and I would object to that now that there is, in fact, a female officer at the scene while this lady was present. We would move to suppress anything. There's no—there's been no testimony—

THE COURT: You waived that a long time ago, sir—the conversation about what the defendant stated in there. And why are we having a motion to suppress in the middle of a trial of a case that's been pending since February.

MR. HUELSKAMP: This is the first time that officer's been put on the scene, Judge. No one—nowhere else has there been any testimony that an actual deputy had been present until this lady's come here.

THE COURT: Actually, your objection's sustained. There's already been one witness testify about what the defendant said in that—in that setting. I think anything at this point in time is just repetitive. So, rather than have a suppression hearing, which you are entitled to, I'm just going to rule for you—

MR. HUELSKAMP: Thank you, sir.

THE COURT: —as it is repetitive. All right."

Record at 133–34.

The record reveals that Hilda's objection and motion "to suppress anything" were made in response to a question concerning statements made by Hilda during the interview. Record at 133. The trial court sustained the objection, ruling that such testimony was repetitive because testimony concerning Hilda's interview statements had previously been admitted. The record further reveals that after the trial court sustained Hilda's objection to the question concerning the statements she had made during the interview, the State proceeded to question Harriet concerning the items she recovered when she searched Hilda. Hilda did not object to Harriet's testimony concerning these items. Hilda also did not object when all four credit cards, the signed receipt from Gold N Gems, and a photograph of the gold herringbone necklace were admitted into evidence. Thus, Hilda's general motion to "suppress anything," made in response to a question concerning statements Hilda had made during her interview, failed to specifically address either Harriet's testimony concerning the items she recovered from Hilda during the search or the physical evidence of the items Harriet actually recovered. Without a more specific objection, the trial court could not have been aware that Hilda's motion to suppress was made in reference to Harriet's subsequent testimony concerning the items she recovered or in reference to the physical items themselves. Therefore, Hilda has waived her objection to the admission of both the testimonial and physical evidence of the items Harriet recovered from her during the search.

## II

### *"Single Larceny Rule"*

Next, we address Hilda's contention that she should not have been convict-

ed of multiple counts of theft because, under the "single larceny rule," there was but one theft offense. The single larceny rule provides that "when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons there is but a single 'larceny', i.e. a single offense." *Raines v. State* (1987) Ind., 514 N.E.2d 298, 300; *Jenkins v. State* (1998) Ind.App., 695 N.E.2d 158, 162 n. 4. "The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design." *Raines, supra* at 300; *Jenkins, supra* at 162 n. 4. Thus, "[i]f only one offense has been committed, there may be but one judgment and one sentence." *Raines, supra* at 300; *Jenkins, supra* at 162 n. 4.

In the present case, the information for Count III charged that Hilda "exert[ed] unauthorized control over" the MBNA credit card belonging to Matthew W. Utterback. Supp. Record at 2. Count IV charged that Hilda "exert[ed] unauthorized control over" the Citibank credit card belonging to David Van Jelgerhuis, and Count V charged that Hilda "exert[ed] unauthorized control over" the J.C. Penney and L.S. Ayres credit cards belonging to Amy Lengel. Supp. Record at 2–3. Thus, for the theft of the MBNA, Citibank, J.C. Penney, and L.S. Ayres credit cards to constitute only one offense under the single larceny rule, Hilda must have exerted unauthorized control over the credit cards at the same time and from the same place.

The trial evidence reveals that the MBNA, Citibank, J.C. Penney, and L.S. Ayres credit cards were stolen on January 21, 1999 and February 1, 1999. Hilda's own testimony reveals that she did not purchase the stolen cards until February 2, 1999. Specifically, she testified that she drove to "38th and Post Road" to "see what type of merchandise was available."

Record at 160. According to Hilda, she purchased all four credit cards from the "guys" "out there on Post Road." Record at 160, 162. Hilda further stated that she "wasn't looking at [the] cards.... I just gave twenty dollars and took the cards they gave me," and that she "really didn't look at any of the cards" to see who had owned them. Record at 163, 165. From Hilda's testimony, it is reasonable to infer that she purchased all four of the credit cards at the same time and from the same place, by giving some guys twenty dollars and "[taking] the cards they gave me." Record·at 163. Furthermore, Hilda's testimony shows that she exerted unauthorized control over the stolen credit cards when she purchased them.

The State contends that Hilda knew or should have known that the credit cards belonged to different people once she took them because the cards were in different names.[4] This, the State argues, evidences Hilda's intent to exert unauthorized control over each card, such that the single larceny rule would not apply. However, the uncontroverted evidence shows that Hilda purchased the credit cards at the same time and from the same place, namely on February 2, 1999 on Post Road. The evidence also shows that Hilda did not look at the cards prior to deciding to purchase them, but that she gave "twenty dollars" for whatever cards were given to her. Record at 163. Thus, under the single larceny rule, theft of the MBNA, Citibank, J.C. Penney, and L.S. Ayres credit cards could constitute only one offense. As there could be only one theft offense, there could be only one judgment and one sentence for theft under these facts. Accordingly, two of the theft convictions must be vacated.

### III

#### *Double Jeopardy*

▪ Finally, Hilda contends that her convictions for forgery and for theft violate

---

4.ᐟ The State did not charge nor does it contend that Hilda was the original thief of the

cards stolen on January 21 and February 1.

the prohibition against double jeopardy under the Indiana Constitution. While Hilda concedes that there is no double jeopardy violation in the present case based upon the essential statutory elements of the crimes of forgery and theft, she argues that the evidence used to establish "unauthorized control" of the credit cards in the theft count is the same evidence used to establish the "lack of authority" element in the forgery counts. Appellant's Brief at 7.

In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, our Supreme Court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded:

> "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson, supra* at 49.

Thus, even if there was no double jeopardy violation in the present case based upon the essential statutory elements of the crimes of forgery and theft, "a violation may still have occurred if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." *Castillo v. State* (2000) Ind.App., 734 N.E.2d 299, 303 (quoting *Richardson, supra* at 53), *reh'g denied, trans. pending.* The " 'defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.' " *Castillo, supra* at 303 (quoting *Richardson, supra* at 53).

In the present case, Hilda was charged and convicted of forgery and theft. The informations for forgery alleged that Hilda, with intent to defraud, uttered Matthew's MBNA credit card to Jean King

and Mohammad Rajput in such a manner that the purchase, and attempted purchase, were purportedly made by Matthew, and that Matthew had not granted Hilda authority for such use. The informations for theft alleged that Hilda knowingly or intentionally exerted unauthorized control over the MBNA, Citibank, J.C. Penney, and L.S. Ayres credit cards of Matthew, David, and Amy, with the intent to deprive any of them of any part of the value or use of their credit cards. Thus, to be convicted of forgery under either Count I or II, the State had to show that Hilda, with intent to defraud, uttered a written instrument in such a manner that it was purported to have been made by Matthew, but was actually made without his authority. To establish that Hilda was guilty of theft, the State had to show that Hilda exerted unauthorized control over the MBNA, Citibank, J.C. Penney, and L.S. Ayres credit cards owned by Matthew, David, or Amy with the intent to deprive them of any part of the value or use of their credit cards.

Here, evidence in support of the forgery convictions revealed that Hilda presented Matthew's MBNA credit card to Mohammad, a sales clerk at Gold N Gems, as the means for paying for the gold herringbone necklace from Gold N Gems; that Hilda signed the receipt for the necklace as "Mrs. Matthew Utterback"; that Hilda presented the same MBNA credit card later that day to a sales associate at J.C. Penney when she attempted to purchase a diamond ring; that Hilda had not been authorized by Matthew, David or Amy to use their credit cards; and, that Hilda knew she was not authorized to use the MBNA credit card. Thus, the trial court would have considered this evidence in light of the forgery elements set forth in the State's charging informations when it determined that Hilda was guilty of forgery.

In support of the theft conviction, the trial evidence and reasonable inferences established that the MBNA, Citibank, J.C.

Penney, and L.S. Ayres credit cards were stolen prior to Hilda's commission of the alleged offenses, that Hilda purchased the stolen credit cards for twenty dollars on Post Road on February 2, 1999, and that she purchased the credit cards for the purpose of "pas[sing] [them] on to others who needed to pay their utility bills and weren't able to." Record at 162. The trial court would have considered this evidence in light of the theft elements set forth in the State's charging informations when it determined that Hilda was guilty of theft.

Considering the evidence presented, we find no reasonable possibility that the evidence used to establish the essential elements of forgery might also have been used to establish the essential elements of theft. The evidence submitted was sufficient for the trial court to conclude that Hilda committed three separate offenses on the same day when she purchased four stolen credit cards, used one of the credit cards to purchase a gold herringbone necklace, and presented one of the credit cards in an attempt to purchase a diamond ring from yet a different store. Thus, under the actual evidence test, Hilda's convictions for theft and forgery are not the "same offense."[5] As such, the convictions do not violate the Double Jeopardy Clause of the Indiana Constitution.

The judgment is affirmed in part, reversed in part, and remanded to the trial court to vacate two of the theft convictions.

NAJAM and BROOK, JJ., concur.

---

5. Our holding in this regard is not affected by the fact that the unauthorized control essential to the theft conviction continued throughout commission of the two forgery offenses.