**Charles BEATY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 71A03–0511–CR–556.

Court of Appeals of Indiana.

Nov. 21, 2006.

Julie P. Verheye, Mishawaka, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, Charles Beaty, was convicted of two counts of Theft as a Class D felony and two counts of Receiving Stolen Property as a Class D felony.[1] Upon appeal, Beaty presents two issues for our review, which we restate as: (1) whether the trial court erred in limiting Beaty's cross-examination of one of the State's witnesses, and (2) whether the single larceny rule precludes Beaty's convictions upon both counts of Receiving Stolen Property.

We affirm.

The facts most favorable to the jury's verdicts reveal that in 2002, John Hohler was a lumber manager at a Lowe's home improvement store. Beaty became acquainted with Hohler because Beaty, a self-employed general contractor, often bought supplies at Lowe's. Hohler gave Beaty legitimate discounts on damaged items or clearance items. Hohler eventually began to give Beaty discounts which were in excess of company policy without authorization. Hohler also began to outright give Beaty merchandise from Lowe's without authorization to do so. Beaty eventually agreed to allow Hohler to fix up a rental home owned by Beaty and in exchange allow Hohler to live there rent free.

On October 18, 2002, Hohler and several other Lowe's employees loaded several items of Lowe's merchandise onto Beaty's truck trailer. Hohler had prepared an estimate for the items to reserve them in

---

1. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.2004).

Beaty's name. Based upon his earlier actions, Hohler had become the subject of the suspicions of Tammy Heinsohn, a loss prevention manager at Lowe's. Ms. Heinsohn videotaped Hohler and the other employees loading the merchandise onto Beaty's trailer. Included among the items loaded onto Beaty's trailer were a DeWalt-brand miter saw, siding material, flashing, and soffits. Hohler gave Beaty a Lowe's "pink ticket" to sign, a "pink ticket" being a form used by Lowe's to verify that a customer has received what they earlier paid for. The pink ticket presented to Beaty was blank, but he nevertheless signed it. Hohler printed off the blank pink ticket so that the other Lowe's employees, who were apparently ignorant of what was going on, would believe that Beaty had paid for the items. Neither Beaty nor Hohler paid for any of the items loaded onto Beaty's trailer.

On October 22, 2002, Beaty again came to Lowe's with his trailer, and more Lowe's merchandise was loaded onto his trailer by Hohler and other Lowe's employees. Included in the items taken this time were windows, trash cans, lumber, and concrete. Beaty signed another blank pink ticket given to him by Hohler and drove off without paying for the items. Ms. Heinsohn also captured this transaction on videotape.

When confronted by Ms. Heinsohn and Lowe's investigator Mark Conachen, Hohler confessed his involvement. Hohler directed Mr. Conachen to three locations where he said the stolen Lowe's property could be found: Beaty's home on Evesham Court, the rental property on Donald Street owned by Beaty which Hohler was fixing up, and Hohler's residence on Dubail Street. Lowe's employees and police went to these locations and hauled away six truckloads of property identified by Hohler as stolen. Among the items recov-

ered were several which were in addition to those alleged to have been taken on October 18 and October 22.

On December 1, 2002, the State charged Beaty with: Count I, aiding and abetting the October 18, 2002 theft of a miter saw and "other videotaped items" belonging to Lowe's; Count II, aiding and abetting the October 22, 2002 theft of "a cart full of merchandise (all videotaped, itemized list in probable cause affidavit)" belonging to Lowe's; Count III, retaining "Lowe's windows and doors at [Beaty's] rental unit on ... E. Donald [Street]" which had been stolen by Hohler; and Count IV, retaining "Lowe's merchandise in the approximate sum of $12,000 at his residence on ... Eavesham Court" which had been stolen by Hohler. App. at 7–8. Hohler was charged with three counts of theft as a Class D felony and ultimately agreed to plead guilty to one count of theft and testify against Beaty. In exchange, the State agreed to dismiss the remaining charges.

A jury trial was held on August 8 through August 11, 2005. During the trial, Beaty was repeatedly limited in his questioning of Hohler with regard to other thefts and wrongdoing by Hohler which did not involve Beaty. Beaty testified that he did not know that the items loaded onto his trailer or found on his properties were stolen, claiming to be Hohler's victim. The jury was given evidence consisting of the videotapes of the thefts on October 18 and 22, and an itemized list of over 150 items recovered by Lowe's from the properties. After the presentation of evidence, the trial court instructed the jury that to convict Beaty as charged in Counts III and IV, the stolen property had to be "in addition to and other than the items referred to in Counts I and II." Tr. at 585. The jury found Beaty guilty as charged. On October 25, 2005, the trial court en-

tered judgments of conviction upon all four counts and sentenced Beaty to three year sentences upon each count. The court ordered six months of the sentences under Counts I and II to be executed and served consecutively and ordered the remainder of the sentences to be suspended to probation. Beaty filed a Notice of Appeal on November 8, 2005.

I

■ Beaty first argues that the trial court committed reversible error by limiting his cross-examination of Hohler. Specifically, Beaty contends that he should have been allowed upon cross-examination of Hohler to inquire into specific instances of misconduct by Hohler which did not involve Beaty, Beaty's theory being that Hohler had previously stolen from Lowe's and that Beaty was just a pawn in Hohler's scheme. In reviewing Beaty's claim, we are reminded that the decision to admit or exclude evidence is a matter within the sound discretion of the trial court, and we will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Collins v. State*, 826 N.E.2d 671, 677 (Ind.Ct.App.2005), *trans. denied, cert. denied,* —— U.S. ——, 126 S.Ct. 1058, 163 L.Ed.2d 885 (2006).

■ Despite his claim that he wished only to impeach Hohler with his prior acts, Beaty's claim comes dangerously close to offering into evidence Hohler's prior bad acts in order to prove Hohler's bad character and that his action in his dealings with Beaty was in conformity therewith. Indeed, it appears that Beaty wanted to show that Hohler had previously stolen items from Lowe's in order to demonstrate that Hohler was more likely to have been the thief in the instant case. The Indiana Rules of Evidence prohibit this. Specifically, Evidence Rule 404(a) provides that

"[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except ... [e]vidence of the character of a witness, as provided in Rules 607, 608 and 609." Evidence Rule 607 simply provides that the credibility of a witness may be attacked by any party, including the party calling the witness. Evidence Rule 609 governs impeachment of a witness by evidence that the witness was convicted of certain crimes. Since there is no indication that the acts Beaty wished to inquire into were ever reduced to convictions, Rule 609 is inapposite.

Evidence Rule 608, which is at issue here, reads in full as follows:

"(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) Specific Instances of the Conduct of a Witness. For the purpose of attacking or supporting the witness's credibility, other than conviction of a crime as provided in Rule 609, *specific instances may not be inquired into or proven by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (emphasis supplied).

Beaty's proffered evidence was not in the form of opinion or reputation, and such evidence would therefore not be admissible under Rule 608(a). Instead, Beaty wished to delve into specific instances of Hohler's conduct, i.e. his prior thefts from his employer. Rule 608(b) specifically states that specific instances of conduct may neither be inquired into nor proven by extrinsic evidence.[2] There is an exception to this rule with regard to a conviction for a crime under Rule 609, which, as mentioned, is not applicable here because the conduct at issue was never the subject of a criminal conviction. Similarly, the limited exception mentioned in the last sentence of Rule 608(b) is inapplicable here because Hohler did not testify regarding the truthfulness of another witness. Indiana cases have consistently held that Evidence Rule 608(b) prohibits the introduction of evidence regarding specific instances of misconduct. *See, e.g., Johnson v. State*, 832 N.E.2d 985 (Ind.Ct.App.2005) (holding that trial counsel's performance was not defective for failing to proffer evidence that State's witness allegedly kidnapped and robbed another party because Evidence Rule 608(b) would have prohibited the admission of such), *trans. denied.*

Beaty nevertheless claims that he was attempting to show the bias or prejudice of Hohler, not impeach his character. Our Supreme Court explained in *Hatchett v. State*, 503 N.E.2d 398, 403 (Ind.1987), that there is a difference between evidence of prior criminal conduct offered to impeach the character of a witness and evidence offered to show the bias or prejudice of a witness. The introduction of evidence of a prior crime is a general attack on the witness's credibility. *Id.* at 404 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). " 'A more particular attack on the witness' credibility is effected by means of cross examination directed toward revealing possible biases, prejudice, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand....' " *Id.* (quoting *Davis*, 415 U.S. at 316, 94 S.Ct. 1105). *See also Trice v. State*, 519 N.E.2d 535, 537 (Ind.1988) (noting difference between evidence of prior misconduct offered for impeachment purposes, which is inadmissible, and evidence of misconduct to show bias, which is admissible in certain instances).

In *Hatchett*, the defendant offered proof concerning the prior convictions of one witness and proof of the criminal acts of another witness. The *Hatchett* court held that although this proof was inadmissible as impeachment evidence, the defendant did not offer the evidence to impeach the witnesses' character. *Hatchett*, 503 N.E.2d at 404. Instead, Hatchett offered the proof as evidence of the witnesses' bias, i.e., their desire to curry favor with the State, and that their prior criminal activities gave them added incentive to cooperate with the State. *Id.* The court held, however, that the trial court's exclusion of the proffered evidence was not reversible error because Hatchett had sufficient opportunity to explore the witnesses' bias. *Id.* Both of the witnesses at issue admitted that they were testifying as a result of an agreement with the State, and both admitted to having prior convictions which were admissible. *Id.* One of

---

**2.** Indiana Evidence Rule 608(b) contains a broader limitation than that found in the Federal Rules of Evidence, which do not limit simple inquiry into specific instances of conduct. *See* 13 Robert L. Miller, Jr., Indiana Practice, Evidence § 608.201 (2d ed.1995).

"At least one commentator has spoken in favor of Indiana's approach, describing the view taken in the federal rules as 'simply a mistake.' " *Id.* (quoting Graham Handbook on Federal Evidence § 608.4 (3d ed.1991)).

the witnesses even admitted to illegal possession of firearms, conduct for which he was not charged. *Id.* Under such circumstances, the *Hatchett* court held that the trial court's limitation of cross-examination of these witnesses was not an abuse of discretion.[3] *Id.*

We follow *Hatchett* and come to the same conclusion here. Even if Beaty's purpose in proffering evidence of Hohler's prior thefts from Lowe's was to show bias rather than generally attack his character, the trial court did not abuse its discretion in excluding such evidence. The jury was well aware of Hohler's possible bias, i.e., his desire to curry favor with the State, because evidence regarding Hohler's plea agreement with the State was admitted into evidence and explored at some length by the State and by Beaty. Moreover, despite the trial court's rulings, Beaty was able to place before the jury some evidence of Hohler's prior misconduct at Lowe's which did not involve Beaty. Specifically, Beaty was able to elicit evidence that Hohler had stolen two levels from Lowe's in September of 2002, that Hohler had been involved with others stealing from Lowe's, that Hohler owed $1,000 to Lowe's for actions that did not involve Beaty, and that Hohler had given a fence to another landlord. With this evidence, and the evidence that Hohler had struck a plea agreement with the State in exchange for his testimony against Beaty, Beaty was sufficiently able to explore Hohler's bias, and the trial court did not err in excluding other evidence regarding Hohler's specific acts of misconduct. *See Hatchett*, 503 N.E.2d at 404. We therefore conclude that Beaty has established no reversible error in the trial court's limiting of his cross-examination of Hohler regarding Hohler's specific acts of misconduct.

## II

■ Beaty claims that the trial court erred in entering judgments of conviction upon both Counts III and IV, insisting that the trial court's actions violated the "single larceny rule." The single larceny rule provides that when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons, there is but a single larceny, i.e. a single offense. *Benberry v. State*, 742 N.E.2d 532, 536 (Ind.Ct. App.2001). The rationale behind the single larceny rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design. *Id.* Thus, if only one offense has been committed, there may be but one judgment and one sentence. *Id.*

Here, the evidence is clear that Beaty committed two separate thefts from Lowe's—one on October 18 and the other on October 22. Because these two thefts did not occur at the same time and same place, the single larceny rule does not prohibit convictions upon both of these incidents. Indeed, Beaty does not claim otherwise. The heart of Beaty's argument is that:

> "[t]here is nothing in the record that establishes whether the items recovered on Dubail and Donald Streets and at [Beaty]'s home, which were not part of the chain of events occurring on October 18 and 22, were stolen on one or multiple occasions and whether these same items were received by [Beaty] on one

---

**3.** We recognize that both *Hatchett* and *Trice* were decided prior to the adoption of the Indiana Rules of Evidence. However, in *Davis*, the case relied upon in *Hatchett*, the United States Supreme Court based its decision on the Confrontation Clause of the Sixth Amendment, not the Federal Rules of Evidence. *See Davis*, 415 U.S. at 315–16, 94 S.Ct. 1105.

or multiple occasions." Appellant's Br. at 16.

Thus, Beaty's argument that he cannot be convicted of both Counts III and IV is not upon the basis that the property he received was the same as the property which was the subject of the thefts on October 18 and 22. Instead, Beaty's argument is there is nothing in the record to show that the items supporting his convictions upon Counts III and IV, i.e., the items other than those taken on October 18 and 22, were either stolen or received on multiple occasions.

We first observe that the single larceny rule by its own terms refers to the taking of property, i.e., larceny or theft. The crime of receiving stolen property, however, does not require that the defendant actually take the property: "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property .…" I.C. § 35–43–4–2(b) ("Section 2(b)"). Beaty's argument effectively asks us to extend the single larceny rule to apply to Section 2(b).

A similar argument was before the court in *Saucerman v. State*, 555 N.E.2d 1351 (Ind.Ct.App.1990). The defendant in that case, who had been convicted of three counts of receiving stolen property, argued that all three convictions could not stand because the record revealed that he had received all of the items of stolen property involved in the three charges at the same time and place. The State countered that the defendant had reason to know that the items he received had been stolen from distinct sources. The *Saucerman* court quoted with approval the following:

" 'the gravamen of the [receiving stolen property] statute is the *possession* of stolen property with guilty knowledge .… [T]he particular ownership of the goods is not an element of the crime and the character of the act is not affected in any way by the fact that the property may have belonged to several owners rather than one.' " *Id.* at 1353 (quoting *People v. Loret*, 136 A.D.2d 316, 526 N.Y.S.2d 872, 874 (N.Y.App.Div.1988)) (emphasis in original).

The court further agreed that " 'retaining' the stolen property of different individuals is but a single act and must be prosecuted as only one offense if the evidence shows ... that the retention or possession of such stolen property was simultaneous." *Id.* (quoting *State v. Bair*, 671 P.2d 203, 208 (Utah 1983)). Because the defendant in *Saucerman* had received the stolen items at the same time and place, the court held that only one offense had been committed. *Id.* at 1354.

▪ Although framed as an issue of double jeopardy, the *Saucerman* court's reasoning is instructive.[4] The single larceny rule states that when multiple items of property are *taken* at the same time and from the same place, there is but a single larceny, irrespective of whether the property belonged to one or several people. *Benberry*, 742 N.E.2d at 536. By simple extension, then, we can say that if a defendant *receives* several items of stolen property, knowing the property to be stolen, at the same time and the same place, he has committed but one criminal act, regardless of whether the items he received belonged to several owners or were the subject of more than one theft. *See Saucerman*, 555

---

4. Indeed, the defendant in *Saucerman* analogized his situation to the single larceny rule. *Id.* at 1353 n. 2. The court conceded that "[w]hile the analogy is not inappropriate, we find it unnecessary to attempt to analogize or distinguish the theft subsection of I.C. 35–43–4–2 and the receiving stolen property subsection of I.C. § 35–43–4–2." *Id.*

N.E.2d at 1353–54.[5] It would also follow that if a defendant receives items of stolen property, knowing the items to be stolen, at separate times or separate places, he has committed separate criminal acts. This would appear to be true regardless of whether the items he received belonged to one owner or were the subject of but one theft. *See id.*

Thus, with regard to Beaty's claim that there is no evidence that the stolen items found on his properties were stolen on multiple occasions, or the State's argument that Beaty's convictions upon Counts III and IV are supported because there is evidence that several incidents of theft occurred other than the October 18 and 22 incidents which support Counts I and II, such arguments are misplaced. As to the items not covered by the theft charges, it is immaterial that the items were actually taken on different occasions because Beaty was not charged with the actual taking. However, Beaty also claims that there is no evidence that he "received" the items supporting his convictions for receiving stolen property on more than one occasion.

We observe that the State did not actually charge Beaty with the act of "receiving" the property; it instead charged Beaty with "retaining" the stolen property. Although the offense described in Section 2(b) is generically referred to as "receiving stolen property," the statute criminalizes three specific acts: receiving, retaining, or disposing of stolen property. *See* I.C. § 35–43–4–2(b). In the present case, the question is not one as to the manner in which Beaty "received" the stolen property, but is instead one of the manner in which he "retained" it.

As discussed above, extension of the single larceny rule to apply to the offense defined in Section 2(b) seems relatively straightforward when dealing with that portion of the statute regarding "receiving."[6] *Cf. Saucerman,* 555 N.E.2d at

5. Courts in other states have come to similar conclusions. *See, e.g., Loret,* 526 N.Y.S.2d at 873 (holding that possession at one time and place of several items taken in separate thefts from various owners constituted one act of criminal possession of stolen property); *Bair,* 671 P.2d at 206–08 (holding that either receiving or retaining stolen property of different individuals is a single act which must be prosecuted as a single offense where the evidence established that the retention or possession of the stolen property was simultaneous); *Sanchez v. State,* 97 N.M. 445, 640 P.2d 1325 (N.M.1982) (citing with approval case law which stated that if a defendant receives stolen property at different times then there are two offenses for which two sentences may be imposed); *State v. Reisig,* 128 Ariz. 60, 623 P.2d 849 (Ariz.Ct.App.1980) (holding that defendant's simultaneous possession of nine articles of stolen property was "analogous to the 'single larceny doctrine'" and was but one act or transaction); *People v. Harris,* 71 Cal.App.3d 959, 139 Cal.Rptr. 778 (1977) (reversing defendants' convictions upon nine counts of possession of articles with defaced or obliterated serial numbers and remanding

for imposition of one conviction where all the stolen items were seized from one place); *Hamilton v. State,* 129 Fla. 219, 176 So. 89 (1937) (holding that receiving or concealing different articles of stolen property at different times and on separate and unconnected occasions constituted separate offenses which could not be prosecuted as one crime in one count even though all the property is later found in the possession of the defendant at the same time and same place). *But see State v. Gilbert,* 281 Or. 101, 574 P.2d 313, 317–18 (1978) (holding that under statute which provided that "there are as many offenses as there are victims," when one defendant withholds the stolen property of two or more victims at the same time and place, the State could charge defendant with multiple counts of withholding stolen property).

6. This rule also seems readily applicable to instances of "disposing" of stolen property, i.e., if a person knowingly *disposes* of items of stolen property, knowing the property to be stolen, at the same time and at the same place, he has committed but one criminal act, regardless of whether the items belonged to

1353. The single larceny rule refers to both the time and place of the larceny—i.e., for the single larceny rule to apply, the theft of the items must have occurred at the *same time* and the *same place*. *See Benberry*, 742 N.E.2d at 536. Thus, by extension, if a person *retains* items of stolen property, knowing the property to be stolen, at one time *and* at one place, that defendant has committed but one criminal act of retention, regardless of whether the items he received belonged to several owners or were the subject of more than one theft. *See Loret*, 526 N.Y.S.2d at 874 (possession *at one time and place* of several items taken in separate thefts from various owners is but one crime because the crime of criminal possession of stolen property is committed *when and where* the property is possessed). It follows from this that if a person retains items of stolen property, knowing the property to be stolen, at *sepa-rate* places, he has committed *separate* criminal acts.[7]

■ We therefore hold that if a person retains items (regardless of when or how the items were stolen or received) at two separate houses on different streets, that person has committed two separate criminal acts of retaining stolen property even if the charge alleges that the items were retained on the same day. Only where the items were retained at the same time and place does the law prevent multiple convictions.[8] *See Loret*, 526 N.Y.S.2d at 873.

Here, the evidence reveals, and Beaty does not directly dispute, that apart from the items supporting the two convictions for theft, items from Lowe's which had not been paid for were found at both of the houses owned by Beaty as detailed in the charging information.[9] Regardless of when or by whom these items were stolen, and regardless of when these items were "received," Beaty "retained" items of sto-

---

several owners or were the subject of more than one theft. It would then also follow that if a person knowingly disposes of items of stolen property, knowing the property to be stolen, at separate times or separate places, he has committed separate criminal acts, regardless of whether the items belonged to one owner or were the subject of but one theft. *See Sanchez*, 640 P.2d at 1327 (holding that defendants may be charged with a separate count of disposing of stolen property for each separate transaction of disposure).

7.  It is not necessarily the case that if a person retains items of stolen property at the same place but different times, he has committed separate criminal acts. This is due to the continuing nature of the act of retaining. For to say that a person commits more than one offense of retaining stolen property when he retains it in one place but over a period of time would expose that person to unlimited charges of retaining because the multiple occasions of retention could theoretically occur every day, hour, minute, or second. *See State v. Schneller*, 199 La. 811, 7 So.2d 66 (1942) (where defendant knowingly possessed stolen items over a period of several days and was

acquitted of a charge of possessing the items on a particular day, doctrine of "former jeopardy" prevented subsequent prosecution of possession of same items on a different date), *cited in* 24 A.L.R.5th 132 at § 9[a]. The period of time during which one retains stolen property therefore might not be a particularly useful means of determining whether more than one offense has occurred.

8.  This solution is not without its own problems: for if a defendant retained one item of stolen property in his attic, while retaining another item of stolen property in his basement, could it be said that he has retained the property in two separate places and therefore committed two acts of retention? Be that as it may, regardless of questions as to what constitutes "separate places" for purposes of retention, we are not called upon in the present case to draw the line so precisely.

9.  The jury was specifically instructed that a conviction on Counts III and/or IV could only be valid if the property retained was "in addition to and other than" the items which had been the subject of the theft charges. Tr. at 584–85.

len property at two separate places, and the law does not prevent him from being convicted for the commission of two separate criminal acts of retaining stolen property. Therefore, the trial court did not err in imposing separate judgments of conviction and sentences upon Counts III and IV.

The judgment of the trial court is affirmed.

MAY, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring in result.

I agree with the result reached here because, as the majority aptly observes, Beaty was able to place before the jury *some* evidence of Hohler's prior misconduct at Lowe's that did not involve Beaty. Hence, Beaty was sufficiently able to explore Hohler's bias notwithstanding the exclusion of other evidence regarding Hohler's specific acts of misconduct.

However, I write separately to set forth my views regarding the trial court's limitation on the cross-examination of Hohler with respect to other thefts and wrongdoing by Hohler that did not involve Beaty. I fully embrace the spirit of Indiana Evidence Rule 608(b), which prohibits the inquiry into specific instances of misconduct unless there is a conviction of a crime as provided in Rule 609. To be sure, the rule produces a logical and practical result under most circumstances.

However, in this case, Beaty consistently maintained that he was "the dupe" of Hohler, while the State's position was that Beaty was the primary beneficiary of a joint plan between himself and Hohler to obtain building materials at large discounts or for free. Appellant's Br. p. 12. By limiting Beaty's cross-examination of Hohler in accordance with Indiana Evidence Rule 608, the trial court excluded evidence establishing that Hohler had an added incentive to curry the State's favor in order to avoid prosecution for other criminal acts precisely because of the plea agreement offered by the State. And, as noted by the majority, several of these acts had not been reduced to a conviction. As a result, Beaty was effectively prevented from delving into additional reasons why Hohler would be biased against Beaty in favor of the State. Hohler certainly had reasons to remain in the State's good graces in order to avoid prosecution for his other acts of misconduct during his employment at Lowe's. When the State dismissed the two counts of theft against Hohler, Beaty was denied the opportunity to fully expose Hohler's biases and motives and the chance to explore the reasons surrounding Hohler's motivation to testify as he did.

In circumstances such as these, where the State has offered a deal to a witness that results in the avoidance of prosecution, the State essentially retains the unfettered discretion to decide the extent to which the jury should learn about a witness's character. In my view, such a restriction on the ability to cross-examine does not comport with the goals of Evidence Rule 608. That said, I am of the belief that yet another exception to the rule preventing the admission of specific acts of misconduct in the absence of a conviction should follow when circumstances such as these arise.

In any event, because Beaty was able to present some evidence of Hohler's misconduct, as well as evidence pertaining to Hohler's plea agreement thereby establishing Hohler's possible bias, I concur in the result reached by the majority in affirming Beaty's convictions.